**FREEDOM HEALTHCARE
SERVICES, INC.,**
Appellant

v.

**ZONING HEARING BOARD OF the
CITY OF NEW CASTLE.**

Commonwealth Court of Pennsylvania.

Argued Oct. 15, 2009.
Decided Nov. 17, 2009.

Jonathan Solomon, New Castle, for appellant.

Angelo A. Papa, New Castle, for appellee.

BEFORE: McGINLEY, Judge, PELLEGRINI, Judge, and KELLEY, Senior Judge.

OPINION BY Judge PELLEGRINI.

Freedom Healthcare Services, Inc. (Freedom) appeals an order of the Court of Common Pleas of Lawrence County (trial court) affirming the Zoning Hearing Board of the City of New Castle's (Board) denial of its application to operate a medical clinic because it does not have the requisite parking. For the reasons that follow, we reverse.

Freedom is the lessee of certain property located in the City of New Castle which is zoned C—1 Commercial District. Lot 499 contains a building previously used as a restaurant/tavern, and Lots 498, 522 and 524, adjacent to or across the street, were paved, lined parking lots used as parking for the restaurant.[1] Both uses were in existence before the current zoning ordinance was established in 1979.[2]

Freedom proposes to use Lot 499 as a medical clinic specializing in substance abuse treatment and the remaining three lots as parking for the new clinic, with a total of 52 off-street parking spaces. The medical clinic will dispense methadone to treat patients addicted to heroin and other opiates and will include individual, group and family therapy sessions. The clinic will have one physician on staff as well as a licensed psychologist, several nurses, counselors and administrative personnel. Medical and dental offices and clinics are permitted uses[3] in a C–1 Commercial District, and the parties agree that Freedom's proposed use constitutes a medical clinic. The zoning ordinance does not provide a set number of parking spaces for a medical clinic, but a medical office is required to have seven on-site parking spaces for each physician that uses the clinic; however, that parking requirement may be satisfied by off-site parking by obtaining a special exception.

Freedom applied to the City zoning officer to use the property as a medical clinic, but the application was denied because Freedom did not have seven on-site parking spaces on Lot 499, the lot on which the clinic would be located. Freedom appealed to the Board and sought, among other things,[4] a special exception to allow 52 off-

---

1. In 1997, the Lawrence County Tax Assessor consolidated all four lots under one tax identification number, Permanent Parcel ID # 04–114200, and all four lots were continually conveyed together on one deed.

2. The Villanova Inn began operating in 1948. Parking began on Lot 498 in 1956 and on Lots 522 and 524 in 1971.

3. *See* Section 1329.04 and Table 1329.04(A).

4. Freedom also argued that because the four lots were consolidated for tax purposes and given a single tax parcel ID number in 1997, the lots have merged into one lot for zoning purposes and their parking plan satisfies the zoning ordinance. It also argued that because parking on Lots 498, 522 and 524 pre-

site parking spaces on Lots 498, 522 and 524 to support the principal use of Lot 499 as a medical clinic. The standards which Freedom had to satisfy to obtain the special exception are set forth in Section 1331.06(b)(3) of the City's zoning ordinance. That section provides that the Board may grant a special exception to allow off-street parking located on a lot within "200 feet distance from the lot of the principal use located in the same zoning district as the principle use as if a special exception in an adjacent zone. However, the Board shall apply all tests to determine the suitability for such a use and the Board finds that it is impractical to provide parking on the same lot with the principal use." To determine the suitability for the parking use and whether a special exception should be granted, the Board must consider (1) whether the use is compatible with adjacent uses and structures; (2) whether it is suited to the topography and other characteristics of the site; (3) whether it complies with all off-street parking and other provisions of the ordinance; and (4) whether it meets the minimum requirements for the health, safety and general welfare of the City.[5] Freedom argued that parking on the additional lots was a suitable use of the property because that property was used for over 30 years as parking lots.

Before the Board, Louis Farmer, Jr. (Mr. Farmer), President of Freedom Healthcare Services, Inc., testified that the proposed methadone clinic would be open seven days per week, patients would come in daily for their medication (which would be dispensed in liquid form), counseling sessions and group meetings with 10 to 20 people present at a time would be conducted on-site, and that he anticipated treating between 200 and 250 patients every day during normal dosing hours of 6 a.m. to 10 a.m. He also testified that there would be one licensed physician on-site as well as a licensed psychologist, administrative support staff, and at least one registered nurse and two licensed practical nurses to actually distribute the methadone.

Neighboring property owners and concerned citizens testified as to potential public safety issues and concerns, including potential loitering of patients in the area, inadequate counseling services, inadequate parking, harm to local businesses, and a potential increase in crime. Many were concerned for the safety of children in the area because there was a daycare center nearby and a school bus stop directly in front of the proposed clinic.

The Board denied Freedom's request for a special exception. First, the Board found that the 52 off-site spaces provided insufficient parking because Freedom's proposed methadone clinic use did not follow the parking pattern of a medical office "as contemplated by our zoning ordinance" because one physician at a medical office would not generate "anywhere near the traffic volume that would be created by the applicants [sic] proposed use" which was to open the clinic for seven days per week, and during the peak operating hours of 6 a.m. to 10 a.m. servicing between 200 and 250 patients per day. Based on that rea-

---

dated the enactment of the current zoning ordinance, parking was a lawful non-conforming use on such properties and should be allowed to continue. The Board determined that the proposed methadone clinic was not a continuing legal nonconforming use because it did not pre-date the ordinance and was not in any way similar to the prior restaurant use.

Freedom appealed to the trial court, which affirmed the Board's decision based upon the above reasoning. The trial court also held that combining the lots into one parcel for tax purposes did not merge them into one lot under the zoning ordinance.

**5.** *See* Section 1325.04.

soning, the Board determined that even though the ordinance only required seven parking spaces for a medical office, the parking scheme presented by Freedom, even though it had 52 parking spaces on the four lots, would be "woefully inadequate" to handle their anticipated patient load at a "medical clinic."

The Board also found that the health, safety and welfare of the neighborhood would be harmed, noting applicants' "noticeable inexperience" in running a methadone clinic, and believed this could prohibit them from properly administering such a facility and potentially jeopardize the welfare of the community. The Board found that the high volume of cars would be unsuitable for the proposed use and that the clinic's parking and traffic needs would not blend with the existing businesses and residences. Also, "the health, safety, and welfare of the established children present in the area and other pedestrian and vehicular traffic in the area would seriously be compromised by the parking request of the applicant." Freedom took an appeal to the trial court, which affirmed, and this appeal followed.[6]

■ On appeal, Freedom contends that that the Board erred in denying its special exception based on inadequate parking. It points to Section 1331.06(b)(2) of the zoning ordinance listing the number of off-street parking spaces required for certain

uses and states that "[w]here the use of the premises is not specifically mentioned, requirements for similar uses shall apply." Medical offices and medical clinics are treated and listed separately throughout the zoning ordinance. While Table 1331.06(B) of the zoning ordinance specifically states that use of property as a medical office requires seven parking spaces for each doctor on staff, it does not list the number of spaces required for a medical clinic. Freedom argues that its proposed use of the property as a methadone clinic is most similar to use as a medical office and because it will only have one doctor on site, it is only required to have seven patient parking spaces available under the zoning ordinance. In response, the Board does not proffer a use that is more similar to that of a medical clinic, but just argues that given the intensity of the use, 52 parking spaces are insufficient.

However, the test for determining what parking is needed under the zoning ordinance is not whether the proposed use would generate similar traffic volumes and patterns, but what permitted use is most similar to the use at issue. The zoning ordinance specifically states that when the proposed use is not listed, the parking requirements for similar uses shall apply. A medical office is the listed use that comes closest to that of a medical clinic[7]

6. Because the trial court took no additional evidence, our standard of review is limited to determining whether the zoning hearing board abused its discretion or committed an error of law. An abuse of discretion occurs if the board's findings are not supported by substantial evidence. *Warner Jenkinson Co., Inc. v. Zoning Hearing Board of Township of Robeson*, 863 A.2d 139 (Pa.Cmwlth.2004).

7. Table 1331.06(B) lists the following uses and their corresponding off-street parking space requirements: automobile laundry; automobile sales and service garages; banks or professional offices; churches and

schools; bowling alleys; community buildings and social halls; dwellings; food supermarkets; funeral homes, mortuaries; furniture and appliance stores; hospitals, nursing or convalescent homes; hotels and motels; manufacturing plants, research or testing laboratories, bottling plants; medical offices; dental offices; restaurants, taverns and night clubs; retail stores and shops; rooming houses and dormitories; service stations; sports arenas, auditoriums, theaters, assembly halls; trailer or monument sales; wholesale establishment or warehouse; apartment buildings more than two stories in height; T-

requiring Freedom only to provide seven off-street parking spaces because it has only one physician on site. Given that the Board failed to specify what other use listed in the zoning ordinance's off-street parking table *would* be most similar to Freedom's proposed use, and that should be used to determine the number of parking spaces that would be necessary to accommodate the methadone clinic, we are constrained to agree with Freedom that only seven parking spaces are required under the zoning ordinance.

Nonetheless, because the zoning ordinance requires parking spaces to be located on the same lot with the principal use of the property, Freedom must satisfy the requirements set forth in Section 1331.06(b)(3) to obtain the special exception for off-site parking. Parking on Lots 498, 522 and 524 is admittedly located within 200 feet of the proposed methadone clinic on Lot 499. The parking lots are sufficient to accommodate 52 cars. Freedom argues that the Board and trial court's denial of its request for a special exception based upon traffic conditions and its potential patient caseload was not supported by substantial evidence.

▮ A special exception is not an exception to a zoning ordinance but rather a use which is expressly permitted absent a showing of a detrimental effect on the community. *Manor Healthcare Corp. v. Lower Moreland Township Zoning Hearing Board*, 139 Pa.Cmwlth. 206, 590 A.2d 65 (1991). The applicant for the proposed use has both the duty to present evidence and the burden of persuading the Board that the proposed use satisfies the objective requirements of the ordinance for the grant of a special exception. Once the applicant meets these burdens, a presumption arises that the use is consistent with the health, safety and general welfare of the community. The burden then normally shifts to the objectors of the application to present evidence and persuade the Board that the proposed use will have a generally detrimental effect. Where, as here, however, the zoning ordinance specifically places the burden on the applicant to show that the proposed use will not have a detrimental effect, the applicant only retains the burden of persuasion. Objectors still retain the initial presentation burden with respect to the general matter of the detriment to health, safety and general welfare. *Id.* The evidence presented by objectors must show a high probability that the use will generate adverse impacts not normally generated by this type of use, and that these impacts will pose a substantial threat to the health and safety of the community. *Id.*

▮ In this case, in denying the special exception for parking, the Board found that the medical clinic was not compatible with adjacent uses and structures and that it did not meet the minimum requirements for the health, safety and general welfare of the City. What was at issue though, was not whether the medical clinic could meet the standards, because everyone agreed that it was a permitted use as of right, but whether permitting parking on off-site lots would be compatible with the adjacent uses or substantially affect the health, welfare and safety of the community. Given that those off-site lots were used for parking for 30 years and were adjacent to or across the street from the clinic, the paucity of evidence that the parking, as opposed to the medical clinic, was incompatible with the adjacent uses, the Board could not have denied the application on that basis.

Also, in finding that the proposed parking would harm the health, welfare and

zone parking; fire stations; adult entertain-        ment establishments.

safety of the neighborhood, the Board found that children were present in the area, and other pedestrian and vehicular traffic in the area would seriously be compromised by the parking request of the applicant because of the high volume of cars emanating from the clinic. We understand the Board's and neighboring residents' concerns about having this type of facility in the neighborhood. Our General Assembly attempted to address those concerns in enacting 53 P.S. § 10621 [8] which prohibited methadone clinics "within 500 feet of an existing school, public playground, public park, residential housing area, child-care facility, church, meetinghouse or other actual place of regularly stated religious worship established prior to the proposed methadone treatment facility," unless "by majority vote, the governing body for the municipality in which the proposed methadone treatment facility is to be located votes in favor of the issuance of an occupancy permit." However, in *New Directions Treatment Services v. City of Reading*, 490 F.3d 293 (3d Cir. 2007), the United States Court of Appeals for the Third Circuit struck down that statute holding that treating methadone clinics differently than other medical clinics violated the Americans with Disabilities Act of 1990. Simply put, a methadone clinic cannot be treated any differently than a medical clinic that is serving as an ordinary medical clinic.

In this case, the Board contends that Freedom has not presented sufficient evidence that it would not harm the health and safety of the community, given the general unsuitability of the volume of cars and patients and the extensive hours of operation of the medical clinic, and because it failed to show how the parking and traffic needs would blend in with the existing businesses and residences. All of those concerns are valid but in the context of this zoning ordinance, those concerns are legally insufficient. First, most of those concerns go to the medical clinic use which is a permitted use as of right with no restrictions on the hours or number of patients served, and the zoning ordinance permits a medical clinic without exception if seven parking spaces are available on the same lot as the medical clinic. Second, what is at issue is whether the parking lots and not the medical clinic are a suitable use for the lots in question. Again, given that these lots have been used as parking lots for over 30 years, are adjacent or immediately adjacent to the medical clinic, and applicant is providing over seven times the number of required spaces, there has not been a showing that the proposed use would breach the *minimum* requirements for the health, safety and general welfare of the City. As such, the Board erred in failing to grant Freedom's special exception to allow parking on Lots 498, 522 and 524 to support the principal use of Lot 499 as a methadone clinic.

Accordingly, the order of the trial court is reversed.

### ORDER

AND NOW, this *17th* day of *November,* 2009, the order of the Court of Common Pleas of Lawrence County is reversed.

---

**8.** Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. § 10621 (held invalid as facially violative of the Rehabilitation Act of 1973 and the Americans with Disabilities Act of 1990 by *New Directions Treatment Services v. City of Reading,* 490 F.3d 293 (3d Cir.2007)).