**Traudi and Robert THOMASON**

v.

**ZONING HEARING BOARD OF the TOWNSHIP OF RADNOR and Radnor Township.**

**Appeal of: Radnor Township.**

Commonwealth Court of Pennsylvania.

Argued May 10, 2011.

Decided Aug. 3, 2011.

John B. Rice, Perkasie, for appellant.

Nicholas J. Caniglia, Wayne, for appellees.

BEFORE: LEAVITT, Judge, and BUTLER, Judge, and KELLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Radnor Township appeals an order of the Court of Common Pleas of Delaware County sustaining a zoning appeal by landowners Traudi and Robert Thomason. In doing so, the trial court reversed an adjudication of the Zoning Hearing Board of Radnor Township (Board) that had denied the Thomasons' validity challenge to the Radnor Township Zoning Ordinance.[1] Because we agree with the trial court that the Ordinance is *de jure* exclusionary of the Thomasons' proposed bed and breakfast use, we will affirm.

The Thomasons are the owners of 211 Strafford Avenue in Wayne, Pennsylvania, in the Township's R–4 Residential District. The property consists of approximately one acre of land and a three-story Victorian house constructed over 100 years ago. The house is 6,000 square feet with eight bedrooms, five full baths and one half bath. It has a large wrap-around porch, gardens, walking paths, a gazebo and a swimming pool. There is a two-car garage and parking for nine additional vehicles.

---

1. RADNOR TOWNSHIP ZONING ORDINANCE, Ord. No. 1564 (1974), *as amended,* now codified at Chapter 280 of the Township of Radnor General Code, §§ 280–1—280–171 (ORDINANCE).

The Thomasons wish to continue to reside in the house and operate a bed and breakfast with five guest rooms. Believing that the Ordinance does not allow a bed and breakfast use in any of the Township's zoning districts, the Thomasons filed a substantive validity challenge pursuant to Section 916.1(a)(1) of the Pennsylvania Municipalities Planning Code (MPC), 53 P.S. § 10916.1(a)(1).[2] Alternatively, the Thomasons requested a use variance from Section 280–29 of the Ordinance, which sets forth the use regulations for the R–4 district.[3]

At a hearing before the Board, Mrs. Thomason testified, *inter alia*, about the generally accepted definition of a "bed and breakfast" in the tourism industry. Typically, a bed and breakfast is a private residence with ten or fewer bedrooms in which the owner-occupant provides overnight accommodations to the public for a fee. Breakfast is included with the price of the room; no other meals are provided. Mrs. Thomason testified that in a bed and breakfast there is usually no rental agreement or landlord-tenant relationship; the guests do not have access to the kitchen; and housekeeping services are provided. In Mrs. Thomason's view, these characteristics distinguish a bed and breakfast from a boarding or lodging house.

In considering the Thomasons' validity challenge, the Board noted that the Ordinance does not expressly allow a bed and breakfast or any other similar establishment for transient guests in the R–4 district. The Ordinance does, however, allow for two similar uses in other zoning districts: (1) a "hotel, motel or inn" in the C–2, C–3 and Planned Business districts and (2) a "rooming house" in the R–5 district by special exception. The Ordinance defines those uses as follows:

> HOTEL, MOTEL OR INN—A building arranged or used for shelter and accommodation for compensation of more than 20 individuals.
>
> * * *
>
> ROOMING HOUSE—A building which has a dwelling unit occupied by the owner and which has accommodations for not more than three roomers.

ORDINANCE § 280–4. The Board concluded that the definition of "rooming house" includes "a small, upscale bed and breakfast establishment, notwithstanding that the descriptive term 'rooming house' often is applied to other kinds of temporary rooming arrangements." Board Opinion at 1.

---

**2.** Act of July 31, 1968, P.L. 805, added by the Act of December 21, 1988, P.L. 1329, *as amended,* 53 P.S. § 10916.1(a)(1). Section 916.1(a) states as follows:

> (a) A landowner who, on substantive grounds, desires to challenge the validity of an ordinance or map or any provision thereof which prohibits or restricts the use or development of land in which he has an interest shall submit the challenge either:
> (1) *to the zoning hearing board under section 909.1(a);* or
> (2) to the governing body under section 909.1(b)(4), together with a request for a curative amendment under section 609.1.

53 P.S. § 10916.1(a) (emphasis added). Section 916.1(c) continues, "If a challenge heard by a zoning hearing board is found to have merit, the decision of the zoning hearing board shall include recommended amendments to the challenged ordinance which will cure the defects found." 53 P.S. § 10916.1(c)(5).

**3.** Section 280–29 states, in relevant part:

> A. A building may be erected and a lot may be used or occupied for any use permitted in R–3 Residence Districts.
>
> * * *
>
> C. Accessory use to include the following:
> . . .
> (1) Home occupations, subject to the provisions of Article XX, § 280–115.1.

ORDINANCE § 280–29.

The Board held that the Ordinance makes adequate, reasonable and viable provision for accommodation of transient guests for compensation, including a small-scale bed and breakfast, so as not to be exclusionary of the Thomasons' proposed use. Accordingly, the Board denied the Thomasons' validity challenge.[4] The Thomasons appealed to the trial court.

The trial court reversed the Board's decision, holding that the Ordinance improperly excludes a bed and breakfast use. The trial court considered other provisions of the Ordinance, not cited by the Board, which regulate a "home occupation." A "home occupation," which is permitted as an accessory use in all of the Township's residential zoning districts, is defined as

> [a]n accessory use serving as a location for a business conducted solely by the resident of the dwelling unit, which is incidental and secondary to the residential use of the dwelling. A home occupation may include a home business or a home office for a resident who may work for another employer, provided that no food or material goods for sale may be located, publicly displayed or sold on the premises.

ORDINANCE § 280–4. More specifically, the trial court focused on Section 280–115.1(D)(4) of the Ordinance, which states:

D. Prohibited uses. The following uses shall be prohibited as home occupations:

\*　　\*　　\*

(4) Bed-and-breakfast.

ORDINANCE § 280–115.1(D)(4). The trial court explained that because a "rooming house" is, by definition, owner-occupied, a "rooming house" is a type of "home occupation." Therefore, the trial court reasoned that the Board erred in finding that a bed and breakfast could be permitted as a "rooming house" since a bed and breakfast is expressly prohibited as a home occupation.

Additionally, as a practical matter, the trial court found that a bed and breakfast could not qualify as a "hotel, motel or inn" under the Ordinance because that use contemplates accommodation of at least 20 guests, far more than a bed and breakfast, which is usually smaller and more intimate. The trial court ordered the Township to grant site-specific relief permitting the Thomasons to operate a bed and breakfast in their home. The Township now appeals.

 On appeal,[5] the Township argues that the trial court erred in finding the Ordinance is *de jure* exclusionary of a bed and breakfast use because a bed and breakfast is encompassed in the definition of a "rooming house," which is permitted by special exception in the R–5 district.[6]

---

4. The Board also denied the Thomasons' request for a use variance by a 2–2 vote. The Thomasons abandoned their request for a variance on appeal to the trial court.

5. Our scope of review where the trial court took no additional evidence is limited to determining whether the Board committed an error of law or abused its discretion. *Ficco v. Board of Supervisors of Hempfield Township*, 677 A.2d 897, 899 n. 4 (Pa.Cmwlth.1996). A zoning hearing board abuses its discretion only if its findings are not supported by substantial evidence. *Valley View Civic Associa-*

*tion v. Zoning Board of Adjustment*, 501 Pa. 550, 555, 462 A.2d 637, 640 (1983).

6. The Township essentially concedes that the Thomasons' proposed bed and breakfast use does not fit within the definition of "hotel, motel or inn," focusing instead on the applicability of the "rooming house" definition. We agree with the trial court that, based upon the evidence adduced at the hearing, a typical bed and breakfast would never accommodate the minimum 20 guests needed to qualify as a "hotel, motel or inn."

The Thomasons counter that a rooming house is a type of "home occupation," and because the Ordinance expressly prohibits a bed and breakfast as a home occupation, on its face the Ordinance excludes bed and breakfasts from every residential zoning district.

■ In a *de jure* challenge, the landowner asserts that the ordinance totally excludes a proposed use. *Caln Nether Company, L.P. v. Board of Supervisors of Thornbury Township,* 840 A.2d 484, 491 (Pa.Cmwlth.2004). The issue of whether a zoning ordinance is exclusionary is a question of law, reviewable by this Court. *Id.* A zoning ordinance is presumptively valid and constitutional. *Ficco v. Board of Supervisors of Hempfield Township,* 677 A.2d 897, 899 (Pa.Cmwlth.1996). However, an ordinance that effects a total prohibition of an otherwise legitimate business use is particularly suspect. *Cracas v. Board of Supervisors of West Pikeland Township,* 89 Pa.Cmwlth. 424, 492 A.2d 798, 800 (1985). A challenger who successfully establishes that an ordinance totally excludes a proposed use overcomes the presumption of validity; the burden then shifts to the municipality to establish a substantial relationship between the ban and an identified, protected public interest. *Id.*

■ With the above principles in mind, we consider the Township's arguments. The Township argues that the Board correctly found that the Ordinance does not exclude the Thomasons' proposed use, which the Township describes as short-term lodging of transient guests for a fee.

The Township contends that the definition of "rooming house," a permitted use in the R–5 district, is sufficiently broad to encompass the Thomasons' proposed use. Further, although a zoning ordinance must provide for all reasonable uses of land, it need not and cannot provide for every specific business model. *Montgomery Crossing Associates v. Township of Lower Gwynedd,* 758 A.2d 285, 289 (Pa.Cmwlth. 2000). Finally, the Township argues that the Thomasons' choice to call their enterprise a bed and breakfast was a marketing decision that has nothing to do with whether their proposed use satisfies the Ordinance's restrictions.

We agree with the trial court that, on its face, the Ordinance excludes bed and breakfasts. The term "bed and breakfast" appears only once in the Ordinance, in the section regulating "home occupations":

> Prohibited uses. The following uses shall be prohibited as home occupations:
>
> * * *
>
> (4) Bed-and-breakfast.

ORDINANCE § 280–115.1(D)(4). A home occupation is permitted as an accessory use in all of the Township's residential zoning districts. Therefore, Section 280–115.1(D)(4) of the Ordinance, on its face, prohibits bed and breakfasts in every district where a residential home might be converted for such a use.[7]

The Township's argument that a bed and breakfast is simply a type of "rooming house" contradicts the Ordinance. As the trial court observed, a "rooming house" is, by definition, a type of business conducted

---

7. Notably, when the Township Planning Commission reviewed the proposed amendments to the Ordinance that resulted in Section 280–115.1(D), it stated:

> The proposed amendment contains a proposed provision which states "Prohibited Uses." Bed and breakfasts and funeral homes are listed as prohibited uses in a Residential district. Such uses are appropriate for a Residential district and should be permitted by conditional use or special exception.

Trial Court Opinion at 6.

by the owner-occupant of a dwelling; therefore, a "rooming house" must also be a type of "home occupation."[8] A bed and breakfast is expressly prohibited as a home occupation. Thus, it is impossible for a bed and breakfast to fall under the designation of "rooming house." Further, because the definition of "home occupation" states that "no food ... may be located, publicly displayed or sold on the premises," ORDINANCE § 280–4, the Thomasons would be prohibited from including breakfast with their patrons' room rental, regardless of whether they call their venture a bed and breakfast or a rooming house.[9]

Once the Thomasons proved the Ordinance is *de jure* exclusionary of their proposed bed and breakfast use, the burden shifted to the Township to establish a substantial relationship between the exclusion and an identified, protected public interest. *Cracas*, 492 A.2d at 800. It is undisputed that the Township offered no evidence that the Ordinance's exclusion of bed and breakfasts is substantially related to the community's health, safety and general welfare.

For all of the foregoing reasons, we affirm the trial court's order.

8. The Township counters that the trial court erred in assuming that a "rooming house" is a "home occupation." The Township argues that the same "faulty logic" could be made for an apartment house where the landlord resides in one of the units. This is not a persuasive argument because rental units in an apartment house are not really accessory uses incidental to the landlord's residential use of his own dwelling; the primary use of the property *is* the rental of individual dwelling units.

9. It is true that "[w]here a proposed use can be considered within another zoning classification, or where a zoning ordinance is broad enough to encompass the proposed use, there is no *de jure* exclusion." *Ficco*, 677 A.2d at 900. Interestingly, Section 280–4 of the Ordinance defines a "tourist house" as "[a] dwell-

*ORDER*

AND NOW, this 3rd day of August, 2011, the order of the Court of Common Pleas of Delaware County in the above-captioned matter, dated September 8, 2010, is AFFIRMED.

ing in which nightly or weekly accommodations are provided for transient guests for compensation." ORDINANCE § 280–4. A "tourist house" seems to be the closest analog to a bed and breakfast, or at least a closer fit than "rooming house," which refers to the undefined term "roomers" rather than "transient guests." Indeed, Mrs. Thomason offered uncontradicted testimony that the term "tourist house" fell out of favor around 1960 but once described what is commonly known today as a "bed and breakfast." Notes of Testimony, November 19, 2009, at 25; Reproduced Record at 43a. Significantly, there is no provision in the Ordinance for a "tourist house" use. The appearance of that term in the definition section is, therefore, likely a relic of the past.