THW GROUP, LLC

v.

## ZONING BOARD OF ADJUSTMENT
and City of Philadelphia.

**Appeal of: Domenick Parris, Melissa Casey, Patti Vaughn, Linda Lewis and Lori Prete.**

Commonwealth Court of Pennsylvania.

Argued Feb. 10, 2014.
Decided March 6, 2014.

Dawn M. Tancredi, Philadelphia, for appellants.

Carl S. Primavera, Philadelphia, for appellee THW Group, LLC.

Andrew S. Ross, Chief Deputy City Solicitor, Philadelphia, for appellee City of Philadelphia.

BEFORE: LEADBETTER, Judge, SIMPSON, Judge, and BROBSON, Judge (P.).

**OPINION BY Judge SIMPSON.**

In this zoning appeal, Neighbors[1] ask whether the Court of Common Pleas of Philadelphia County (trial court) erred in reversing an order of the Philadelphia Zoning Board of Adjustment (ZBA) that denied THW Group, LLC (Applicant) a zoning use permit to allow for the operation of a methadone clinic. Neighbors assert: (1) the trial court erred in ignoring the ZBA's factual findings concerning the distinctions between a methadone treatment facility and a medical office; (2) a methadone treatment facility is not a permitted use under the Philadelphia Zoning Code (Code); (3) Applicant lacked standing to obtain a zoning permit; and, (4) the trial court erred in relying on facts outside of the ZBA record where the trial court received no additional evidence. Discerning no merit in these assertions, we affirm the trial court.

## I. Factual and Procedural Background

In January 2011, Applicant applied for a zoning use permit for a medical office for the treatment of patients (no overnight stays) in the first floor of a two-story structure located at 7900 Frankford Avenue, Philadelphia (the property). The property lies in a C–2 Commercial District (C–2 District).

Applicant indicated that other existing uses of the building, an insurance/brokerage office on the first floor and 11 apartments on the second floor, would continue unchanged.[2] The Department of Licenses and Inspections (L & I) issued a permit for the proposed use under Title 14 of the Code.[3] Applicant subsequently obtained

---

1. Neighbors are Domenick Parris, Melissa Casey, Patti Vaughn, Linda Lewis and Lori Prete.

2. Surrounding uses include a Sunoco gas station on one side of the property and a 7–

Eleven convenience store located across the street.

3. Title 14 of the Code was repealed and replaced by the provisions of Bill No. 110845, approved December 22, 2011, and effective

building permits for interior alterations, and it undertook construction work authorized by the permits.

The proposed methadone clinic would occupy a first floor tenant space last used as a restaurant and bar. The clinic would operate from 6:00 a.m. to 3:00 p.m. daily and would serve approximately 200 patients a day. It would be staffed by a doctor, counselors, a registered nurse, insurance administrators and secretaries. Services provided at the proposed facility would include administering daily medication, drug counseling, evaluation of new patients, and addiction-related medical testing, including urine and blood testing. Security would be provided both inside and outside the facility during all hours of operation. The facility would have five off-street, accessory parking spaces, four of which would be dedicated to staff use.

Upon learning the proposed medical office would be a methadone clinic, Neighbors challenged the issuance of the permit on the basis a methadone clinic is not a permitted use under the Code in the C–2 District. The ZBA held a public hearing on the appeal.

At the hearing, City employee Jeanne Klinger (Klinger), the head of L & I's zoning unit, testified regarding the issuance of the permit. Neighbors presented the testimony of Dr. Lawrence Norton (Neighbors' Expert), an expert in the field of addiction treatment, whose experience includes the operation of methadone clinics in New Jersey and Pennsylvania for approximately 12 years. Applicant presented the testimony of one of its owners. Additionally, several community members voiced their opposition to the proposed methadone clinic. Also, a state represen-

tative voiced concerns over parking near the property.

The ZBA also received and considered petitions in opposition and letters from area residents and political representatives who oppose the use. Grounds for concern included traffic congestion and the proximity of residences, a grade school, a day care center and churches.

After the hearing, the ZBA issued a decision in which (by a 4–1 vote) it determined L & I erred in granting Applicant's permit application for the proposed methadone clinic. In reaching its decision, the ZBA relied on the testimony of Neighbors' Expert, who testified regarding the differences between a methadone clinic and a medical office. According to Neighbors' Expert, a methadone clinic is open seven days a week, administers methadone to as many as 500 patients a day and warehouses large volumes of narcotics. He further testified methadone clinics create security concerns not typically associated with traditional medical offices, and such clinics can detrimentally impact the health and safety of the communities in which they are located.

The ZBA determined that, pursuant to Section 14–105 of the Code, "[i]n each district only the uses specified in this Title and uses accessory and incidental thereto shall be permitted." ZBA Op., Concl. of Law No. 1. Thus, the ZBA stated, the challenged use, a methadone clinic, is permitted as of right only if it is specifically authorized by the Code provisions applicable to C–2 Districts. The ZBA determined a methadone clinic is not a permitted use of a C–2 property; therefore, the permit for the proposed facility was issued in error.

August 22, 2012. There is no dispute that the former provisions were in effect at the relevant times in this case.

Although medical offices, hospitals and medical centers are permitted under C–2 regulations, the ZBA rejected Applicant's argument that the proposed methadone clinic fell within any of these authorized use categories. The ZBA also stated that methadone clinics did not exist at the time the Code was written. Therefore, it was unlikely that Philadelphia City Council (City Council), in authorizing medical offices, contemplated a facility that would serve such a high volume of patients on a daily basis.

In addition, and as explained more fully below, the ZBA found L & I should have refused the permit on the ground it created a condition of "multiple structures per lot," which is specifically prohibited by Section 14–113 of the Code. Applicant appealed to the trial court.

Without taking additional evidence, the trial court reversed the ZBA's decision. More particularly, the trial court determined the ZBA erred as a matter of law in concluding a methadone clinic is not a permitted use in the C–2 District. The trial court explained that the Code specifically permits the use of a property in a C–2 District for the "treatment of patients." Tr. Ct., Slip Op., 6/19/13, at 3. The Code also permits medical centers and medical offices in the C–2 District. The trial court further stated that a methadone clinic is a medical office for the treatment of patients and, therefore, a permitted use in the C–2 District. The trial court reasoned there is no difference between a medical clinic and a medical office or medical center-both provide treatment to patients. The trial court relied on a dictionary definition of the term "clinic" as "a private or specialized hospital; a place or occasion for giving medical treatment or advice, especially in a hospital devoted to one topic." *Id.* at 4 (quoting the NEW SHORTER OXFORD ENGLISH DICTIONARY ON

HISTORICAL PRINCIPLES, Volume 1 (1993)).

Additionally, the trial court rejected Neighbors' reliance on this Court's decisions in *Thomason v. Zoning Hearing Board of Township of Radnor,* 26 A.3d 562 (Pa.Cmwlth.2011), and *In re Appeal of Costco Wholesale Corp.,* 49 A.3d 535 (Pa. Cmwlth.2012), for the proposition that a zoning ordinance's failure to state that a specific use is permitted indicates such a use is not permitted in the applicable zoning district.

The trial court also distinguished this case from the Fayette County Common Pleas Court's decision in *Boni v. Zoning Hearing Board of Fayette County,* 81 Pa. D. & C.4th 44 (C.P. Fayette 2007), which Neighbors relied on to support their position that methadone clinics are not permitted as medical offices because they did not exist when the Code was written.

In *Boni,* the common pleas court determined a "methadone treatment facility" could not be considered a "clinic" as defined under the County's zoning ordinance. *Id.* at 60. Specifically, at the time the applicant filed its zoning application, there was a pending ordinance amendment that clarified that the definition of "clinic" did not include a "methadone treatment facility." *Id.* The pending ordinance amendment contained a specific definition and specific provisions for a new "methadone treatment facility" use category. *Id.* at 58–59. This established that the local legislative body intended to define a methadone facility as something different from a clinic. In this case, the trial court reasoned, *no proposed amendment existed at the time Applicant filed its zoning application,* rendering *Boni* easily distinguishable.

Further, citing a federal appellate decision from the Third Circuit, the trial court opined that municipalities are not free to apply different zoning standards to metha-

done clinics from ordinary medical clinics as this would be discriminatory. *See New Directions Treatment Servs. v. City of Reading,* 490 F.3d 293 (3d Cir.2007) (holding Section 621(a)(1) of the Pennsylvania Municipalities Planning Code (MPC)[4] regulating the location of methadone clinics was facially discriminatory under Title II of the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131–12165, and Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794, because it singled out clinics for different zoning procedures). For all these reasons, the trial court sustained Applicant's appeal, reversed the decision of the ZBA, and reinstated the permit issued by L & I. Neighbors appealed to this Court.[5]

Thereafter, Neighbors filed an application for stay, which, after argument, this Court denied. This matter is now before us for disposition.

## II. Issues

■ On appeal,[6] Neighbors argue the trial court erred in ignoring the ZBA's factual findings concerning the distinctions between a methadone treatment facility and a medical office in determining a methadone treatment facility was a permitted use in a C–2 District. They also argue a methadone treatment facility is not a permitted use under the Code because methadone treatment facilities are not specifically permitted and did not exist when the Code was enacted. Neighbors further contend the use permit L & I issued to

Applicant was invalid where Applicant did not have a property interest and, thus, lacked standing to obtain the permit. Additionally, Neighbors maintain the trial court erred in relying on facts outside the ZBA record in concluding a methadone treatment facility was a permitted use in a C–2 District.

## III. Discussion

### A. ZBA's Determination that Methadone Treatment Facilities are not Permitted in C–2 Districts

Neighbors first contend the ZBA properly sustained their appeal because methadone treatment facilities are not defined in the Code, and the Code is a permissive code in which uses must be specifically allowed. As the ZBA recognized, a methadone treatment facility is not identified as a specifically authorized use in C–2 Districts. *See* Section 14–302 of the Code. The ZBA also correctly determined a methadone treatment facility does not fall within any of the use categories specifically authorized in C–2 Districts, such as medical offices, hospitals, and medical centers.

Neighbors argue the ZBA's decision was consistent with this Court's recent decisions that highlight the paramount importance of definitions in a permissive code. *See Costco; Thomason.* Neighbors assert the ZBA's determination that a methadone treatment facility is not a permitted use in a C–2 District was based on its findings

4. Section 621 of the MPC, Act of July 31, 1968, P.L. 805, *as amended, added by* the Act of June 18, 1999, P.L. 70, 53 P.S. § 10621 (held invalid as facially violative of the Rehabilitation Act of 1973 and the Americans with Disabilities Act by *New Directions Treatment Services v. City of Reading,* 490 F.3d 293 (3d Cir.2007)).

5. Before the trial court, Neighbors also sought a stay of the trial court's order pending their appeal to this Court, which was denied.

6. Because the parties presented no additional evidence after the ZBA's decision, our review is limited to determining whether the ZBA committed an abuse of discretion or an error of law. *Society Hill Civic Ass'n v. Phila. Zoning Bd. of Adjustment,* 42 A.3d 1178 (Pa. Cmwlth.2012).

concerning the stark differences between a methadone treatment facility and the other uses that are specifically permitted in C–2 Districts, *i.e.,* medical offices, hospitals, and medical centers. In particular, the ZBA accepted and relied on the unrebutted expert testimony of Neighbors' Expert concerning the unique characteristics of a methadone treatment facility, as compared to medical offices, hospitals, and medical centers. Thus, as in *Costco* and *Thomason,* the ZBA properly determined a methadone treatment facility was not a specifically permitted use and could not be "shoe-horned" into a permitted use. Appellants' Br. at 14. We disagree.

█ To that end, contrary to Neighbors' assertions, the trial court did not ignore the ZBA's factual findings in determining Applicant's proposed methadone clinic is a permitted use under the Code. Rather, the trial court looked to the applicable permitted uses in the C–2 District contained in the Code, and it determined Applicant's proposed methadone clinic was a permitted use. Thus, the trial court determined the ZBA erred as a matter of law in reversing L & I's grant of the permit because the ZBA's decision rested on a misinterpretation of the Code. We agree with trial court's determination.

█ The interpretation of a zoning ordinance is a question of law. *Northampton Area Sch. Dist. v. Zoning Hearing Bd. of Twp. of Lehigh,* 64 A.3d 1152 (Pa. Cmwlth.), *appeal denied,* —— Pa. ——, 76 A.3d 540 (2013). Similarly, the question of whether a proposed use falls within a given zoning classification is a question of law that is fully subject to this Court's review. *Id.*

█ When interpreting the meaning of municipal ordinances, we are guided by the principles of statutory construction. *Bailey v. Zoning Bd. of Adjustment of City of Phila.,* 569 Pa. 147, 801 A.2d 492 (2002). Like statutes, the primary objective of interpreting ordinances is to determine the intent of the legislative body that enacted the ordinance. *See* Section 1921 of the Statutory Construction Act of 1972, 1 Pa.C.S. § 1921; *Bailey; Malt Beverages Distribs. Ass'n v. Pa. Liquor Control Bd.* 918 A.2d 171 (Pa.Cmwlth.2007) (*en banc* ), *aff'd,* 601 Pa. 449, 974 A.2d 1144 (2009). In pursuing that end, we are mindful that an ordinance's plain language generally provides the best indication of legislative intent. *Id.* Thus, statutory construction begins with examination of the text itself. *Id.*

In reading the plain language of an ordinance, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage." 1 Pa.C.S. § 1903(a). Further, every ordinance shall be construed, if possible, to give effect to all its provisions so that no provision is "mere surplusage." 1 Pa.C.S. § 1921(a). Where the words in an ordinance are free from all ambiguity, the letter of the ordinance may not be disregarded under the pretext of pursuing its spirit. 1 Pa.C.S. § 1921; *see also* 1 Pa. C.S. § 1903 (words and phrases in a statute shall be construed in accordance with their common and accepted usage).

█ Also, where a court needs to define an undefined term, it may consult dictionary definitions for guidance. *Adams Outdoor Adver. LP v. Zoning Hearing Bd. of Smithfield Twp.,* 909 A.2d 469 (Pa. Cmwlth.2006).

█ In addition, zoning ordinances must be construed expansively so as to afford the landowner the broadest possible use and enjoyment of his land. *Rabenold v. Zoning Hearing Bd. of Palmerton Twp.* 777 A.2d 1257 (Pa.Cmwlth.2001).

Former Section 14–303(2)(k) of the Code, which set forth the use regulations for the C–2 District, permits *by right,* "the erection, construction, alteration or use of buildings and/or land for ..." "[p]ersonal service or *treatment of patients." Id.* (emphasis added). The C–2 District regulations also permit *by right,* "[t]he uses permitted in any Residential District,* except attached buildings used solely for dwelling purposes. *All use qualifications provided in Residential Districts are not required in this district* [.]" Former Section 14–303(2)(a) of the Code (emphasis added). In turn, "[m]edical and surgical hospitals and *medical centers,*[7] and sanitaria" are permitted in certain residential districts, as are "*offices of any doctor of medicine,* osteopathy, dentistry, chiropractic, optometry or podiatry; minister or lawyer[.]" Former Sections 14–203(2)(a)(6) & 14–212(a)(1) of the Code (emphasis added); see also former Section 14–203(b) of the Code (permitting offices of doctors of medicine as a "residential-related" use). Indeed, the ZBA recognized that "medical offices, hospitals and medical centers are permitted under C–2 regulations...." ZBA Op., Concl. of Law No. 3.

Here, Applicant proposes to use the property for a methadone clinic. The dictionary defines the term "clinic," in relevant part, as "*a facility* (as of a hospital) *for diagnosis and treatment of outpatients.*" Merriam-Webster's Collegiate Dictionary 214 (10th ed. 2001) (emphasis added). Applying the plain meaning of this term, Applicant's proposed use clearly qualifies as a use of the property for the "treatment of patients," and a medical office, both of which are specifically permitted in the C–2 District. Indeed, as the ZBA found, services provided at the proposed facility include administering daily medication, drug counseling, evaluation of new patients, and addiction related medical testing, including urine and blood testing. F.F. No. 11. The ZBA also found the proposed facility would be staffed by a doctor, counselors and a registered nurse. F.F. No. 10. Because Applicant's proposed use falls within a specific, permitted use category in the C–2 District in which the property lies, no error is apparent in the trial court's legal determination that Applicant's proposed methadone clinic is permitted in the C–2 District.[8] *See Discovery House, Inc. v. Metro. Bd. of Zoning Appeals of Marion Cnty.,* 701 N.E.2d 577, 579 (Ind.Ct.App.1998) (proposed methadone clinic fell "squarely under" language of permitted use classification for "[o]ffices

7. The Code defines a "Hospital/Medical Center" as:

An institution specializing in giving clinical, temporary and emergency *services of a medical* or surgical *nature to human patients,* and licensed by State law to provide facilities and services in surgery, obstetrics and general medical practice. *Such institutions include* allied and adjunct medical facilities such as medical schools, nursing schools, student residences, laboratories, research facilities, *out-patient treatment and medical offices* which may be in the same building or separate buildings, provided, this does not include non-accessory, non-adjacent or independently operated medical office buildings, group medical practices or laboratories[.]

Section 14–102(62) of the Code (emphasis added). At the ZBA hearing, Applicant indicated its application for a State license was pending.

8. Also, as the trial court explained: "While, L & I was not aware of [Applicant's] plan to create a methadone clinic at the Frankford property at the time of the permit application[,] an L & I employee testified she still would have issued the permit as of right because a methadone clinic would classify as a medical office. The ZBA's conclusion that it does not is an error of law." Tr. Ct., Slip Op., at 4; *see* ZBA Op., Finding of Fact No. 16; Reproduced Record at 86a.

for physicians ... and other professions dealing with public health."); *see also Comprehensive Addiction Treatment Servs., Inc. v. City & Cnty. of Denver,* 795 P.2d 271 (Colo.App.1989) (proposed methadone treatment facility qualified as an "office," like other medical offices, and was permitted by right in applicable zoning district under city zoning ordinance).

Further, *Thomason* and *Costco,* relied on by Neighbors, do not compel a different result. First, in *Costco,* this Court affirmed decisions of a zoning hearing board and a common pleas court that Costco's proposed gasoline filling station was not permitted as an accessory use to its retail store where the zoning ordinance only permitted "shops, stores or *other indoor facilities*" for retail sales as both permitted and accessory uses. *Costco,* 49 A.3d at 540. Because a, gasoline station was not included in the zoning ordinance's varied list of permitted retail uses as it was not a shop, store or "other indoor facility," we determined the lower tribunals properly determined Costco was not entitled to approval of its proposed gasoline station as an accessory use.

*Costco* is readily distinguishable here. There, we held the use of property for a gas station, which occurs almost entirely outdoors, could not be considered an indoor facility. Here, unlike in that case, Applicant's proposed methadone treatment clinic falls within the Code's permitted use of a building for the "treatment of patients," *see* former Section 14–303(2)(k) of the Code, and as a medical office.

Also distinguishable is *Thomason.* There, this Court held a zoning ordinance was *de jure* exclusionary where it excluded bed and breakfasts. Specifically, we held that a proposed five-room bed and breakfast did not fall within the zoning ordinance's defined "hotel, motel or inn" use, which required accommodations for more

than 20 individuals, or the zoning ordinance's defined "rooming house" use, which contemplated an owner-occupied building with accommodations for no more than three roomers. *Thomason,* 26 A.3d at 564. In so doing, we focused on a provision of the zoning ordinance that specifically prohibited bed and breakfasts as a home occupation throughout the entire township. We further explained the proposed bed and breakfast did not fall within the defined "hotel, motel or inn" use because it would accommodate far fewer guests than that required by the ordinance, and it did not fall within the definition of a "rooming house" because a rooming house was a type of home occupation and the zoning ordinance specifically prohibited bed and breakfasts as a home occupation.

Clearly, *Thomason* is inapposite here. First, *Thomason* was based on the specific language of the Radnor Township Zoning Ordinance, not the Philadelphia Zoning Code. In addition, while at first blush it would appear that a bed and breakfast could fall within "motel, hotel or inn" or "rooming house" use categories, a reading of the zoning ordinance in its entirety in that case revealed it could not, based on the specific exclusion of bed and breakfasts as a permitted home occupation. Unlike in *Thomason,* Neighbors point to no Code provision that reveals that methadone clinics do not fall within the broad permitted use of property in a C–2 District for the "treatment of patients" or as a medical office or "medical center."

## B. Non-existence of Methadone Treatment Facilities When Code was Written

■ Neighbors next argue the ZBA properly sustained their appeal because methadone treatment facilities did not exist when the Code was written. To that

end, Neighbors analogize this case to the common pleas court's decision in *Boni*. In line with *Boni*, the ZBA here determined methadone treatment facilities did not exist when the Code was written, and "[i]t is therefore unlikely that City Council, in authorizing medical offices, contemplated a facility that would serve such a high volume of patients on a daily basis." ZBA Op., Concl. of Law No. 4. Thus, Neighbors contend, the ZBA properly determined a methadone treatment facility was not a permitted use in the C–2 District. This argument fails as Neighbors' reliance on *Boni* is misplaced.

More specifically, in *Boni*, the zoning hearing board granted a special exception for a "methadone treatment facility" under the theory that such a facility was a medical "clinic" under the terms of the county zoning ordinance. At the time the application was filed, the ordinance made no specific provision for a "methadone treatment facility," but an ordinance amendment pending at the time of the applicant's application made clear that such facilities were *not* included in the "clinic" use category. 81 Pa. D. & C.4th at 60. On appeal, the court of common pleas opined:

> What the pending ordinance makes crystal clear, however, is that the definition of 'clinic' contained in the previous ordinance absolutely did *not* include a 'methadone treatment facility.' Methadone treatment facilities were essentially unknown when the previous ordinance was written. If the previous ordinance was understood to include a 'methadone treatment facility' as an ordinary medical 'clinic,' there would have been no need for the specific definition and spe-

cific provisions regarding a 'methadone treatment facility' in the new ordinance. *Id.* (emphasis in original). Ultimately, the common pleas court remanded for further evidence to determine whether the proposed facility qualified as a methadone treatment facility under the amendment.

*Boni* is not controlling. *See Ralston v. Ralston*, 55 A.3d 736 (Pa.Super.2012) (decisions of courts of common pleas are not binding precedent for appellate courts, but may be considered for their persuasive value). Moreover, *Boni* is easily distinguishable from the case presently before us. Specifically, the Code does not contain a definition of "clinic" or "medical office" that would exclude the proposed use. Rather, the Code permits a "medical office" for the "treatment of patients." As explained in greater detail above, the Code's C–2 District use regulations are clearly broad enough to encompass a methadone clinic. Moreover, unlike in *Boni*, there was no Code amendment pending here that would evidence a different intent by City Council. Indeed, City Council repealed and replaced Title 14 of the Code in 2011, and it did not make any special provisions for methadone clinics.[9]

## C. Purpose and Scope of Code

█ Neighbors also briefly assert the ZBA's decision is consistent with the purpose and scope of the Code, and the ZBA's "powers" pursuant to Sections 14–101 and 14–1801 of the Code. To that end, in enforcing the Code, the ZBA is tasked with the responsibility of promoting "the public health, safety, order and general welfare by regulating and restricting the location ... and use of buildings ... to conserve property value and to encourage the most

---

9. City Council did, however, enact Zoning Code amendments regarding medical office uses in Northeast Philadelphia, which became effective December 5, *2013*. *See* Section 14–

515 of the Code. These regulations not only post-date Applicant's January *2011* application to L & I, but also Applicant's appeals to the trial court and this Court.

appropriate use of land . . . ." and "to lessen congestion in the streets." Section 14–101(1) of the Code. Neighbors contend the evidence relied on by the ZBA concerned these issues. Reproduced Record (R.R.) at 46a–49a. Thus, the ZBA's decision was consistent with both the Code's purpose and scope and the ZBA's power and responsibility to enforce its provisions. We reject this argument.

More particularly, we cannot sustain the ZBA's decision on the ground that it was consistent with the "purpose" and "scope" of the Code. Rather, as explained above, because the express terms of the Code are broad enough to encompass Applicant's proposed methadone treatment clinic as *a use permitted by right* in the C–2 District, any alleged inconsistency with the "purpose" or "scope" of the Code cannot serve as a basis upon which to reject Applicant's proposed use. *See Freedom Healthcare Servs., Inc. v. Zoning Hearing Bd. of City of New Castle,* 983 A.2d 1286, 1292 (Pa. Cmwlth.2009) (where proposed methadone clinic was permitted by right without regard to number of patients served, concerns over health and safety of community, including unsuitability of volume of cars and patients and extensive hours of operation, as well as traffic and parking issues, while valid, were legally insufficient).

### D. Prohibition on "Multiple Structures Per Lot"

Neighbors further maintain the ZBA properly found Applicant's proposed use created "multiple structures per lot," which is specifically prohibited by Section 14–113 of the Code. Thus, Neighbors argue, even if a methadone treatment facility was a permitted use in a C–2 District, which it is not, separate, proper grounds existed for the ZBA's decision sustaining Neighbors' appeal. This argument, to which Neighbors devote two sentences of their brief, fails.

Despite the fact that this issue was not raised or even discussed at the ZBA hearing, the ZBA determined L & I also should have denied Applicant's permit request on the ground that, "it created a condition of 'multiple structures per lot,' which is specifically prohibited by Code Section 14–113." ZBA Op., Concl. of Law No. 5. The ZBA stated "[t]he rules for determining what will constitute multiple structures are set forth at Code Section 14–102(119)," which defines the term *'Separate Building'* as follows:

> Where any building is subdivided into separate units, floors or portions of floors which are not interconnected and served by a common entranceway to other units, floors or portions of floors, each subdivision of the structure shall be considered a separate building, provided, that each separate building may have additional entranceways serving the ground floor or portions thereof;

Concl. of Law No. 6. The ZBA stated that the plans submitted with Applicant's use registration application show no shared entryway or interconnection between the space occupied by the proposed methadone clinic and the space devoted to other uses on the lot. Concl. of Law No. 7. Therefore, the tenant space occupied by the proposed methadone clinic constitutes a "separate building" under the Code. *Id.* As such, the ZBA determined, Applicant's proposal required a variance from Section 14–113's prohibition of "multiple structures on a lot." *Id.*

Contrary to the ZBA's convoluted determination, we perceive no violation of Section 14–113 of the Code. That Section states: "Unless otherwise specified under the provisions of this Title, *only one principal structure or use shall be permitted on a lot." Id.* (Emphasis added.)

Despite its determination that Applicant's proposal would impermissibly create

"multiple *structures* per lot," *see* Concl. of Law No. 5, the ZBA found Applicant's proposed methadone clinic would be located "on the first floor of *an existing [two] story structure* ...." F.F. No. 1. Thus, Applicant's proposal would not create an additional or new "principal structure" as proscribed by Section 14–113 of the Code.

The ZBA also referenced Section 14–102(119) of the Code's definition of "separate buildings" in determining Applicant's use of the first floor for its proposed clinic would constitute a "separate building" because it is on a separate floor than the apartments above it, and it lacks an interconnection and common entranceway to the other floors of the building.

While the ZBA correctly observed that Section 14–113 of the Code permits *only one principal structure* per lot, Applicant's proposal does not contemplate creation of an additional "principal structure" on the lot. Thus, even if Applicant's proposal contemplates the creation of "separate buildings" as that term is defined by the Code, it simply does not contemplate creation of a prohibited additional "principal structure."

Perhaps more importantly, our review of the record reveals the original 1977 zoning/use registration permit L & I issued for the property,[10] which allowed for a restaurant and three shops on the first floor and 11 apartments on the second floor of the structure, long pre-dates the Code provision permitting only one principal structure on a lot.

### E. Trial Court's Rejection of Neighbors' Expert's Testimony

■ Neighbors also argue the trial court exceeded its authority in rejecting

the ZBA's acceptance of and reliance on the testimony of Neighbors' Expert concerning the factual differences between a methadone treatment facility and a "medical office for the treatment of patients." Neighbors assert the trial court was bound by the ZBA's factual findings where the ZBA issued findings of fact and the trial court did not take additional evidence. Thus, the trial court was required to accept the ZBA's factual finding that a methadone treatment facility was not a "medical office." We reject this argument.

In particular, Neighbors' Expert is an expert in the field of methadone clinics, not zoning. His testimony was admitted under that limitation. R.R. at 94a–95a. Although Neighbors' Expert testified regarding the differences between a methadone clinic and a typical medical office, he was not qualified to testify as to what constitutes a "medical office" under the Code. In any event, Neighbors' Expert essentially testified that a methadone clinic is a medical facility that treats patients by providing medication, counseling, physical examinations, and taking blood and urine samples. R.R. at 95a–96a. On cross examination, Neighbors' Expert agreed these are also characteristics of a medical office. R.R. at 103a. The trial court did not err in choosing not to rely on Neighbors' Expert's testimony to make a legal determination as to what constitutes a "medical office" under the Code.

### F. Federal Law

Neighbors also contend the trial court erroneously concluded that the ZBA's determination results in impermissible discrimination in violation of the ADA. In

---

10. *See* Certified Record, Item No. 5, Application for Zoning Permit and/or Use Registration Permit, issued 4/26/77.

support, the trial court relied on the Third Circuit's decision in *New Directions.* Here, unlike in that case, there is no such facial discrimination in the Code. Rather, the ZBA simply determined a methadone treatment facility is not a "medical office for the treatment of patients," and thus is not a permitted use in a C-2 District. Again, we disagree.

■ As the trial court explained in its opinion, federal law requires that recovering heroin addicts be treated as persons with a disability under the ADA and the federal Rehabilitation Act. Treating methadone clinics differently than other medical clinics violates the ADA. *Freedom Healthcare* (citing *New Directions* ).

In *New Directions,* the Third Circuit held that Section 621 of the MPC, which restricted the placement of methadone treatment facilities within 500 feet of a school, public playground or park, residential housing area, child-care facility or church, facially violated Title II of the ADA and Section 504 of the federal Rehabilitation Act. In *New Directions,* the operator of a methadone treatment clinic and individual methadone patients brought suit after the City of Reading denied the operator's permit application in which it sought to open a new treatment center in an area of the city interspersed with private residences. The City denied the zoning permit application based on Section 621 of the MPC. The operator and patients of the clinic brought suit on constitutional and federal statutory grounds, raising both facial and as applied challenges to Section 621.

Relying on prior decisions by the Sixth [11] and Ninth Circuits,[12] the Third Circuit held Section 621 of the MPC, which singled out methadone clinics (and thereby methadone patients) for different treatment was facially discriminatory under the ADA and the Rehabilitation Act. The Court noted both federal statutes withhold protection from individuals who pose a significant risk to the health or safety of others,[13] but determined the record before it contained ample evidence the methadone patients did not pose a significant risk. The Court further stated that neither the City of Reading nor its *amicus,* the Commonwealth, offered any evidence to the contrary.

Two years later, in *Freedom Healthcare,* this Court relied on New *Directions,* in rejecting neighbors' concerns over the placement of a proposed methadone clinic in their neighborhood, explaining: "Simply put, a methadone clinic cannot be treated any differently than a medical clinic that is serving as an ordinary medical clinic." *Freedom Healthcare,* 983 A.2d at 1292; *see also Habit OPCO v. Borough of Dunmore* (Pa.Cmwlth., No. 2312 C.D.2010, filed April 21, 2011) (unreported), 2011 WL 10858496 (zoning ordinance provisions that treated methadone clinics differently from other medical clinics, were facially discriminatory under the ADA and were therefore invalid).

Based on this authority, the trial court here correctly stated, "the [Third] Circuit has held that municipalities are not free to apply different zoning standards to methadone clinics from an ordinary medical clinic. . . . Although this court might sympathize with the concerns of the surrounding

---

**11.** *MX Grp., Inc. v. City of Covington,* 293 F.3d 326 (6th Cir.2002).

**12.** *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch,* 179 F.3d 725 (9th Cir.1999).

**13.** *See Sch. Bd. of Nassau County, Florida v. Arline,* 480 U.S. 273, 107 S.Ct. 1123, 94 L.Ed.2d 307 (1987).

community, we are bound to follow the existing law of this City and Commonwealth." Tr. Ct., Slip Op., at 6.

## G. Trial Court's Alleged Reliance on Extra–Record Evidence

■ Neighbors next maintain the trial court erred in accepting and relying on evidence that was not part of the record before the ZBA where the trial court did not receive additional evidence. Specifically, the trial court relied on the Oxford English Dictionary's definition of "clinic," which Applicant provided to the trial court during oral argument, even though that dictionary definition was not part of the record before the ZBA. Neighbors assert the trial court's acceptance and reliance on this dictionary definition was an impermissible abuse of the trial court's authority, particularly where numerous definitions from various other sources (including the McGraw Hill Concise Dictionary of Modern Medicine, Colliers English Dictionary, and the American Heritage Dictionary of the English Language) were part of the record before the ZBA. R.R. at 284a–90a. This argument fails.

■ The rules of statutory construction indicate that where terms are not defined they must be construed according to rules of grammar and according to their common and approved usage. 1 Pa.C.S. § 1903(a); *Therres v. Zoning Hearing Bd. of Borough of Rose Valley*, 947 A.2d 226 (Pa.Cmwlth.2008). Pennsylvania courts generally use dictionaries as source material to determine the common and approved usage of terms not defined in statutes. *Pennsy Supply, Inc. v. Zoning Hearing Bd. of Dorrance Twp.*, 987 A.2d 1243 (Pa.Cmwlth.2009); *Adams Outdoor Adver.; Therres.* Thus, the trial court did not exceed its authority here by utilizing a

dictionary to define a term that is not defined in the Code.

## H. Applicant's Alleged Lack of Standing

As a final point, Neighbors argue the trial court erred in failing to conclude Applicant lacked standing to obtain the use permit. Neighbors point out that under Pennsylvania law, only a "landowner," defined as the owner or the owner's lessee, has standing to apply for relief in zoning matters. They contend the trial court here erred in failing to conclude Applicant lacked standing to obtain the use permit where it did not have a property interest when it filed its application and when the use permit was subsequently issued. Neighbors argue the trial court's opinion is void of any discussion of the standing issue. Nonetheless, it is beyond dispute that Applicant did not have a property interest when it applied for the permit, nor did it have a property interest when the permit was issued. Thus, the issuance of the permit was clearly erroneous and should be invalidated. *Berman v. Pa. Convention Ctr. Auth.*, 901 A.2d 1085 (Pa. Cmwlth.2006) (court may take judicial notice at any stage of a proceeding, including the appellate stage). We reject this argument.

■ To that end, our review of the record reveals that Neighbors did not raise a standing issue before the ZBA; therefore, this issue is waived.[14] *See Thompson v. Zoning Hearing Bd. of Horsham Twp.*, 963 A.2d 622 (Pa.Cmwlth.2009) (lack of standing is not a jurisdictional question and any defect in standing can be waived if not presented before the zoning hearing board). Indeed, in zoning cases, this Court consistently holds that failure to

14. In their brief, Neighbors acknowledge they did not raise this issue before the fact-finder, but rather raised it for the first time before the trial court. *See* Appellants' Br. at 11.

raise the issue of standing during the proceedings before the fact-finder results in waiver. *Friedlander v. Zoning Hearing Bd. of Sayre Borough,* 119 Pa.Cmwlth. 164, 546 A.2d 755 (1988); *Active Amusement Co. v. Zoning Bd. of Adjustment,* 84 Pa.Cmwlth. 538, 479 A.2d 697 (1984); *Cohen v. Zoning Bd. of Adjustment,* 53 Pa. Cmwlth. 311, 417 A.2d 852 (1980).

For all the foregoing reasons, we affirm the trial court's order.

Judge COHN JUBELIRER did not participate in this decision.

### ORDER

**AND NOW,** this 6th day of March, 2014, the order of the Court of Common Pleas of Philadelphia County is **AFFIRMED.**