# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bloomsburg Town Center, LLC     :
    :
    v.     :
    :
Town of Bloomsburg,     :    No. 905 C.D. 2019
           Appellant     :    Argued: September 17, 2020


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
             HONORABLE MICHAEL H. WOJCIK, Judge
             HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON         FILED: November 5, 2020


      The Town of Bloomsburg (Town) appeals an order of the Court of Common Pleas of the 26th Judicial District, Columbia County branch (trial court), reversing the decision of the Town Council of Bloomsburg (Town Council) that denied Bloomsburg Town Center, LLC's (BTC) curative amendment challenge to the validity of the Town's Zoning Ordinance (Ordinance). Upon review, we reverse.

      In general, a municipality is required to authorize all legitimate non-residential land uses somewhere within its boundaries unless it can establish that the exclusion bears a relationship to the public health, safety, morals, and general welfare. *See Beaver Gasoline Co. v. Zoning Bd. of the Borough of Osborne*, 285 A.2d 501, 505 (Pa. 1971). Zoning ordinances that exclude uses are categorized as

either *de jure* or *de facto* exclusionary. *MarkWest Liberty Midstream & Res., LLC v. Cecil Twp. Zoning Hearing Bd.*, 102 A.3d 549, 571 (Pa. Cmwlth. 2014). In a *de jure* exclusion case, "the challenger alleges that an ordinance on its face totally excludes a use." *Id.* at 571-72 (quoting *Twp. of Exeter v. Zoning Hearing Bd. of Exeter Twp.*, 962 A.2d 653, 659 (Pa. 2009)).[1]

BTC owns a 17.23-acre property located at 595 West 11th Street (Property) within the Town's Industrial Park (I-P) Zoning District upon which it proposes to construct a substance abuse treatment center. Reproduced Record (R.R.) at 1a, 562a, 585a. On January 27, 2017, BTC submitted a challenge to Town Council, pursuant to Section 609.1 of the Pennsylvania Municipalities Planning Code (MPC),[2] asserting that the Ordinance is unconstitutionally exclusionary because it "fails to provide for substance abuse treatment and recovery programs and services" as a permitted use within any of the Town's zoning districts. R.R. at 1a.

While the Ordinance at issue does not allow for medical clinics and hospitals, including outpatient facilities, as permitted uses in the district where the

---

[1] Here, it is undisputed that BTC is raising a *de jure* exclusion challenge as a drug and alcohol treatment center is not expressly provided for as a defined use category anywhere within the Town.

[2] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10609.1. Section 609.1(a) of the MPC provides, in part:

> [a] landowner who desires to challenge on substantive grounds the validity of a zoning ordinance or map or any provision thereof, which prohibits or restricts the use or development of land in which he has an interest may submit a curative amendment to the governing body with a written request that his challenge and proposed amendment be heard and decided as provided in section 916.1. The governing body shall commence a hearing thereon within 60 days of the request . . . .

53 P.S. § 10609.1(a).

Property is located, the Town's Health Care (HE-C) Zoning District and Residential Conservation (R-C) Zoning District permit those uses. The Ordinance defines hospital[3] as:

> A place for diagnosis, treatment or other care of humans on an around the clock basis, having facilities used primarily for inpatient medical and surgical care and for the treatment of sick and disabled persons.

Ordinance § 27-302; R.R. at 24a. The Ordinance defines "medical clinics" as:

> Establishments primarily engaged in furnishing medical, surgical or other services to individuals, including the offices or [sic] physicians, dentists and other health care practitioners, medical and dental laboratories, outpatient care facilities, blood banks and oxygen and miscellaneous types of medical supplies and services.

Ordinance § 27-302; R.R. at 25a.[4]

Along with its challenge, BTC submitted a proposed curative amendment that would revise chapter 27 of the Ordinance and create a Health and Human Service Campus (HHSC) Overlay District encompassing the Property. R.R. at 1a-9a. BTC subsequently submitted a revised curative amendment listing 14 permitted uses within the proposed HHSC Overlay District, only 2 of which are relevant to this appeal, namely "Alcohol and Substance Abuse Addiction Treatment

---

[3] The Ordinance also separately defines the term "medical offices" as "[a]n office of licensed physicians, dentists and other health practitioners." Ordinance § 27-302; R.R. at 25a.

[4] Notably, the Ordinance specifically states all uses not specifically permitted in the HE-C and R-C Zoning Districts—the districts where hospitals and/or medical clinics are permitted—are prohibited. Ordinance §§ 27-501 & 512; R.R. at 33a, 46a.

3

and Recovery Programs, Housing, and Services," and "Behavioral Health, Wellness, and Substance Abuse Treatment Services." R.R. at 10a.

Town Council conducted hearings on BTC's curative amendment challenge on March 20, 2017, and May 9, 2017. R.R. at 322a, 357a. Matthew Zoppetti, managing member of BTC and lead developer of the project, testified that BTC planned to provide a comprehensive substance abuse treatment program where individuals would first participate in an inpatient detoxification program for 30 to 90 days, while simultaneously receiving counseling, career training, and physical fitness programming.[5] R.R. at 327a-28a. Mr. Zoppetti further testified that the program would provide longer-term living with access to a wide range of facilities including a Navy SEAL-inspired obstacle course, gymnasium, swimming pool, invention center, general store, artisan shop with training in glass, painting and pottery, and an auto body detailing, restoration, and small engine repair shop. R.R. at 328a-29a. Mr. Zoppetti explained that the proposed facility would have a women's wing with a daycare, as well as an on-site laboratory for drug testing, and individuals would be able to participate in outdoor activities such as gardening, volleyball, bocce, and horseshoes. *Id.*

Mr. Zoppetti confirmed that nurses would be on-site at the detoxification program, and psychologists would provide counseling services, and he assumed physicians may be on-site as well. R.R. at 328a, 336a. He further stated that the facility would be subject to numerous state licensing requirements through the Department of Drug and Alcohol Programs, and that he intended to hire an

---

[5] BTC's plans for the proposed facility at the Property include 528 beds for detoxification, inpatient stays, and extensive inpatient and clean living. R.R. at 571a, 587a.

operator familiar with state regulations to manage the proposed facility. R.R. at 334a, 337a.

On cross-examination, Mr. Zoppetti testified that he had no experience with the operation of a substance abuse treatment center. R.R. at 334a. He also admitted that there was no other facility located in the Commonwealth, or perhaps the entire United States, that was providing the scope of services proposed by BTC for this facility. R.R. at 335a.

Alex Poirier, a consultant with experience in hospital administration and a former executive director of a drug and alcohol treatment center, testified as to the community's need for a comprehensive substance abuse treatment center. R.R. at 340a-43a. Mr. Poirier stated that based upon his experience, substance abuse treatment centers are distinct and different uses from hospitals. R.R. at 343a. On cross-examination, Mr. Poirier admitted that a substance abuse treatment center can be provided within the context of a hospital, although he was not aware of such an arrangement in Pennsylvania. R.R. at 343a. Mr. Poirier further admitted that it would be absolutely necessary, and a critical component of such a facility, to contract with physicians and nurses to provide medical services for individuals going through detoxification on-site, and that drugs may need to be administered during this process. R.R. at 344a.

Jerome Skrincosky and Thomas Shepstone both testified on behalf of BTC as experts in the field of planning and zoning, and both opined that the Ordinance was exclusionary because it did not provide for a substance abuse treatment center in any of the Town's zoning districts. R.R. at 346a, 351a. Mr. Skrincosky further declared that a comprehensive substance abuse treatment center as proposed by BTC would not be encompassed within the Ordinance's definitions

5

of "hospital," "medical clinic," or "medical office." R.R. at 347a-48a. However, on cross-examination, Mr. Skrincosky indicated that substance abuse treatment can occur at either a free-standing site or within the context of a hospital campus. R.R. at 408a.

Mr. Shepstone specifically testified that the Ordinance requires a hospital to provide "inpatient medical and surgical care," and that such services are "not anywhere close to what happens at a drug and alcohol treatment facility." R.R. at 352a. On cross-examination, Mr. Shepstone admitted that a substance abuse treatment center can be operated under the administration of a health care facility as well as within a hospital, and he identified at least 22 facilities in the Commonwealth where that particular use occurs within a hospital setting. R.R. at 363a. Mr. Shepstone also admitted that when individuals are going through detoxification, "clearly" some sort of a "medical procedure" would be required to "pull them down from whatever they are on," and that drugs may be administered by a physician as part of that procedure. R.R. at 403a.

Diane Levan, a member of the Town Planning Commission, testified on behalf of BTC that the Ordinance did not permit substance abuse treatment centers within any of the Town's zoning districts. R.R. at 420a-22a. Ms. Levan explained that BTC had worked with the Town Planning Commission in preparing the curative amendment submitted along with its challenge. R.R. at 423a.[6]

The Town presented the testimony of Dr. Stephen Paolucci, chairman of psychiatry for Geisinger Health System and chief medical officer for the Geisinger Bloomsburg Hospital (Geisinger) located in the Town. Dr. Paolucci

---

[6] During the hearing on March 20, 2017, counsel for BTC admitted that the proposed curative amendment sought to use the Property primarily as a comprehensive substance abuse treatment center, with the remaining 13 uses intended as accessory uses. R.R. at 332a.

6

testified that Geisinger opened a Medication Assisted Treatment Program (MATP) in March 2017 to provide outpatient opportunities for the medication assisted treatment of opioid addiction. R.R. at 432a-35a. Geisinger's MATP operates in a building adjacent to the hospital and is staffed by a physician trained in addiction medicine, care managers, a pharmacist trained in addiction medicine, and other staff. R.R. at 434a-35a. Dr. Paolucci stated that Geisinger's MATP does not include a counseling component and is not licensed by the Department of Drug and Alcohol Programs. R.R. at 433a-35a.

John Varaly testified for the Town as an expert in the field of zoning and land use planning. R.R. at 457a. Mr. Varaly testified that after reviewing BTC's curative amendment challenge and proposed plan for the Property, he concluded that while the Ordinance does not specifically state that a substance abuse treatment center is a permitted use in the Town, such use fits within the Ordinance's definition of "hospital" or "medical clinic." R.R. at 462a-63a, 499a.

Mr. Varaly testified that the Ordinance's definition of hospitals contains treating people for medical issues, which includes substance abusers who are considered disabled persons under the Americans with Disabilities Act.[7] R.R. at 462a. In addition, Mr. Varaly stated that in his 42 years of experience in the zoning and land use planning field, he has never seen an ordinance that contained a definition for a "comprehensive drug and alcohol treatment facility." R.R. at 475a.

On July 20, 2017, Town Council issued a decision finding that BTC failed to meet its burden of proof to establish that the Ordinance is exclusionary and, therefore, denying BTC's curative amendment challenge. R.R. at 591a-92a. Town Council made conclusions of law, including the following:

[7] 42 U.S.C. §§ 12101-12213.

7

12. A substance abuse treatment center is a use encompassed within the definition of a hospital under the [] Ordinance because such a facility: (a) will diagnose, treat, and provide care to humans; (b) can provide the services described in (a) on an around-the-clock basis; (c) can have facilities to provide inpatient medical care for individuals going through alcohol and opioid withdrawal; and, (d) can provide care for individuals addicted to alcohol and opioids who are sick and disabled persons.

13. A substance abuse treatment center is encompassed within the definition of a "medical clinic" under the [] Ordinance because a medical clinic provides "medical, surgical, or other services to individuals . . . [and includes] outpatient facilities."

14. A "substance abuse treatment center" is a use encompassed with[in] the definition of "hospital" and "medical clinic" under the [] Ordinance.

R.R. at 591a. BTC subsequently filed an appeal to the trial court.

The trial court did not take additional evidence and on June 24, 2019, issued an opinion and order reversing the decision of Town Council, and further ordering that BTC "be permitted to develop a substance abuse treatment center on [the P]roperty and that [the] Town [] provide [an] amendment to said Ordinance to permit such in a reasonable amount of time from the date of this Order." R.R. at 657a. The trial court determined that the language in the Ordinance's definition of the term "hospital" is clear and free from all ambiguity, as it requires that such facilities be used *primarily for both* inpatient medical and surgical care, *and* for the treatment of sick and disabled persons. Similarly, the trial court noted that the Ordinance's definition of a "medical clinic" provides that such facilities be "*primarily* engaged in furnishing medical, surgical or other services to individuals . . . ." R.R. at 656a (emphasis in original). The trial court found that the record in the

8

present case demonstrated that substance abuse treatment centers are prohibited from providing any surgical care, and that medical care is not the primary function of such facilities. For these reasons, the trial court concluded that BTC's proposed substance abuse treatment center is not encompassed within the Ordinance's definition of hospital or medical clinic, and that BTC succeeded in proving the Ordinance is unconstitutionally exclusionary. The Town now appeals to this Court.

Where the trial court takes no additional evidence, "our scope of review is limited to determining whether [Town Council] committed an error of law or manifestly abused its discretion." *Diversified Health Assocs., Inc. v. Zoning Hearing Bd. of Borough of Norristown*, 781 A.2d 244, 246-47 (Pa. Cmwlth. 2001) (citing *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637 (Pa. 1983)). Town Council is the factfinder here, and a conclusion that it abused its discretion may only be reached if its findings are not supported by substantial evidence. *Diversified Health*, 781 A.2d at 247 (citation omitted). Moreover, whether a proposed use, as described in BTC's application and through testimony, falls within a given zoning classification is a question of law fully subject to this Court's review. *THW Grp., LLC v. Zoning Bd. of Adjustment*, 86 A.3d 330, 336 (Pa. Cmwlth. 2014).

The Town essentially argues that Town Council's interpretation of the Ordinance was correct, that the Ordinance must be broadly interpreted, and that there is substantial evidence to support the conclusion that a substance abuse treatment center may be permitted within the definition of both a hospital and a medical clinic. As such, the Town asserts that the Ordinance is not unlawfully exclusionary and a curative amendment is inappropriate. Conversely, BTC argues that neither of these use categories is broad enough to encompass its proposed comprehensive substance

9

abuse treatment center, and, therefore, Town Council abused its discretion in denying BTC's curative amendment.

A party challenging the lawfulness of an ordinance bears a heavy burden as an ordinance is presumptively valid and constitutional. *Atiyeh v. Bd. of Comm'rs of the Twp. of Bethlehem*, 41 A.3d 232, 235 (Pa. Cmwlth. 2012) (citing *Ficco v. Bd. of Supervisors*, 677 A.2d 897, 899 (Pa. Cmwlth. 1996)). As this Court has repeatedly held:

> The fact that a zoning ordinance does not contain a specific provision addressing a proposed use is not, in and of itself, a basis for finding an unconstitutional exclusion of that use. *Caln* [*Nether Co., L.P. v. Bd. of Supervisors of Thornbury Twp.*], 840 A.2d [484,] 491 [(Pa. Cmwlth. 2004)]. Where an ordinance does not mention a specific use, we must determine whether the proposed use is included within another use that has been specifically provided for. *Id.* When a proposed use can be considered within another zoning classification or, where a zoning ordinance is broad enough to encompass the proposed use, there is no *de jure* exclusion. *Id.*

*Atiyeh*, 41 A.3d at 236; *see also Ficco*, 677 A.2d at 900 ("where an ordinance does not mention a specific intended use, we must determine whether a reasonable interpretation of the ordinance reveals another zoning classification in which that particular use may be allowed").

When interpreting the meaning of a zoning ordinance, we are guided by the principles of statutory construction with the primary objective of determining the intent of the legislative body that enacted the ordinance. *THW Grp.*, 86 A.3d at 336. Undefined terms in an ordinance are to be given their common, everyday meaning, and courts may consult sources such as the dictionary, statutes, or

10

regulations for assistance. *See Atiyeh*, 41 A.3d at 236; *Diversified Health*, 781 A.2d at 246-47. "However, enactment of a specific definition in the ordinance produces a different effect because the legislative body may furnish its own definitions of words or phrases in order to guide and direct judicial determinations . . . ." *Diversified Health*, 781 A.2d at 247 (citation omitted). Section 603.1 of the MPC provides as follows:

> In interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction.

Added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1. Moreover, "[i]n determining whether an ordinance creates a *de jure* exclusion, '[u]ncertainties in the interpretation of an ordinance are to be resolved in favor of a construction which renders the ordinance constitutional.'" *Montgomery Crossing Assocs. v. Twp. of Lower Gwynedd*, 758 A.2d 285, 288 (Pa. Cmwlth. 2000) (quoting *Upper Salford Twp. v. Collins*, 669 A.2d 335, 336 (Pa. 1995)). *See also Caln Nether*, 840 A.2d at 491 (stating "ordinances are to be construed expansively, affording the landowner the broadest possible use and enjoyment of its land").

With this background in mind, we now turn to the Ordinance at hand which defines a hospital use as "a place for diagnosis, treatment or other care of humans on an around-the-clock basis, having facilities used *primarily* for inpatient medical *and* surgical care *and* for the treatment of sick and disabled persons." Ordinance § 27-302; R.R. at 24a (emphasis added). As noted by the trial court and BTC, the Ordinance's definition of hospital contains a conjunctive rather than a

11

disjunctive list of requirements. There is no doubt BTC's proposed substance abuse treatment center would provide "for the treatment of sick and disabled persons," as some of the proposed services include inpatient opioid detoxification as well as various longer-term substance abuse treatment and counseling services. *See THW Grp.*, 86 A.3d at 342 (noting recovering addicts must be treated as persons with a disability under the ADA) (citing *New Directions Treatment Servs. v. City of Reading*, 490 F.3d 293 (3d Cir. 2007)). However, for the proposed facility to be considered a hospital as specifically defined under the Ordinance, it must also provide both medical *and* surgical care. R.R. at 24a; *see also* Tr. Ct. Op. at 2-4; BTC's Brief at 12. The definition goes even further still, requiring that a facility be used *primarily* for these purposes. While not specifically defined in the Ordinance, Webster's Dictionary defines "primarily" as "for the most part; chiefly" and "in the first place."[8] There is no evidence in the record that BTC's proposed facility would provide *any* surgical care, nor that surgical care would be a primary service of the facility.[9]

The Town focuses on the word *primarily*, arguing in its brief to this Court that the use of that particular word in the definition means that an entity does not have to provide all of the services listed in order to qualify as a hospital under the Ordinance. Town's Brief at 21-23. This argument simply defies logic and the common usage of the word "primarily." A reasonable interpretation of the Ordinance's definition cannot be said to expand the meaning of the term hospital to

---

[8] Merriam-Webster's Online Dictionary, https://www.merriam-webster.com/dictionary/primarily (last visited November 4, 2020).

[9] We would note that BTC repeatedly avers that no surgical care would be provided at the proposed facility. *See* R.R. at 352a, 602a-03a; BTC's Brief at 12.

12

include uses that do not provide for inpatient medical and surgical care. Given these facts and the specific language of the Ordinance, Town Council erred in determining that a substance abuse treatment center is encompassed within the definition of a hospital because that definition requires that both medical *and* surgical care must be provided as a *primary* activity of such a facility.

Next we turn to the Ordinance's definition of a medical clinic, which is more broadly defined as an "[e]stablishment[] *primarily* engaged in furnishing medical, surgical *or other services* to individuals, including the offices or [sic] physicians, dentists and other health care practitioners, medical and dental laboratories, outpatient care facilities, blood banks and oxygen and miscellaneous types of medical supplies and services." Ordinance § 27-302; R.R. at 25a (emphasis added). Again, we are confronted with the term "primarily" as a qualifier for the types of services a facility must provide to fit within this definition under the Ordinance. Yet, unlike the definition of a hospital, here the Ordinance uses the disjunctive "or" rather than the conjunctive "and" so that a facility can qualify as a medical clinic if it is primarily engaged in furnishing medical, surgical, *or other services* to individuals.

The testimony here supports Town Council's finding that a substance abuse treatment center necessarily provides medical services. Mr. Zoppetti, BTC's principal, admitted that the proposed facility would have an inpatient detoxification center that would be staffed by nurses, psychologists, and perhaps physicians, R.R. at 328a & 336a, and an on-site drug testing laboratory, R.R. at 328a, and would provide various types of counseling services. R.R. at 327a-28a. Mr. Zoppetti further testified that the facility would also provide longer-term living and would be subject to numerous state licensing requirements through the Department of Drug and

13

Alcohol Programs.  R.R. at 334a.  He explained that the other proposed uses at the Property, such as the gymnasium, artisan shop, and auto body repair shop were intended as accessory uses to the comprehensive substance abuse treatment center. R.R. at 332a.

Alex Poirier, BTC's own witness and the former director of a substance abuse treatment center, testified as follows:

> Q: Now, the type of facility that Mr. Zoppetti is proposing, it's, for lack of [a] better term, start to finish.  A person coming right off the street hot off drugs, correct?  Or on drugs, correct?
>
> A: That's correct.
>
> . . . .
>
> Q: Okay.  But in your experience in any facilities that you've provided, do you have physicians on staff to address those medical needs that those individuals would have?
>
> A: Not of staff.  I would contract with them.
>
> Q: But you did contract for physicians to provide medical services for people going through detoxification?
>
> A: Absolutely I would.
>
> Q: Would that be an absolutely necessary component to –
>
> A: Yes.

R.R. at 344a.

In addition, Dr. Paolucci testified that Geisinger's MATP program, which is located in Town, falls under "the medical care for patients."  R.R. at 434a-

35a. The MATP program is staffed by a physician trained in addiction medicine, care managers, and a pharmacist trained in addiction medicine. R.R. at 434a-35a.

Given the above, we find that Town Council did not commit an error of law or abuse its discretion in determining that the Ordinance is not exclusionary and properly denied BTC's curative amendment challenge. *See Montgomery Crossing*, 758 A.2d at 288; *Ficco*, 677 A.2d at 900-01. While the Ordinance does not expressly state a substance abuse treatment center use is permitted in the Town and, as explained above, it does not fall within the definition of a hospital, it is included within the broad definition of a medical clinic use in the HE-C and R-C Zoning Districts as an "[e]stablishment[] primarily engaged in furnishing medical, surgical or other services to individuals . . . ." Ordinance § 27-302; R.R. at 25a. The record contains substantial evidence to support a finding that a substance abuse treatment center use is encompassed within the definition of a medical clinic given the extensive medical and counseling services BTC intends to provide at the proposed facility. *See THW Grp.*, 86 A.3d at 330 (holding that a proposed methadone clinic qualified as a use of property for treatment of patients and as a medical office); *Freedom Healthcare Servs., Inc. v. Zoning Hearing Bd. of City of Carlisle*, 983 A.2d 1286 (Pa. Cmwlth. 2009) (in appeal of denial of zoning application for lack of adequate parking, court held proposed methadone clinic and drug addiction treatment facility that would have on staff physician, licensed psychologist, nurses, and counselors was most similar to listed use of a medical clinic).[10]

_____

[10] A curative amendment is the vehicle by which a landowner may challenge a zoning ordinance which allegedly "prohibits or restricts the use or development of land in which he has an interest. . . ." Section 609.1(a) of the MPC, 53 P.S. § 10609.1(a). Moreover, the remedy is to allow reasonable site-specific relief to the landowner that brings a successful challenge. *See Atiyeh*, 41 A.3d at 238. As discussed *supra* on page four, BTC's proposed curative amendment lists several permitted uses that appear to have nothing to do with either the Property or the proposed substance abuse treatment center, including:

We note that the model of "comprehensive" substance abuse treatment center proposed in this matter is unusual in nature,[11] with facilities ranging from a Navy-SEAL inspired obstacle course to training in pottery to a small engine repair shop. However, the Town is correct that this Court has repeatedly stated that a municipality must provide "all reasonable uses," but is not "required to zone for every business model . . . ." *Montgomery Crossing*, 758 A.2d at 289. *See also Crystal Forest Assocs., LP v. Buckingham Twp. Supervisors*, 872 A.2d 206, 218 n.14 (Pa. Cmwlth. 2005) (alleging township ordinance was unduly restrictive on the development of mobile home parks in agricultural zone); *Cambridge Land Co. v. Twp. of Marshall*, 560 A.2d 253, 260 (Pa. Cmwlth. 1989) (*en banc*) (finding no authority for landowners' proposition that "every municipality's zoning ordinance

> B. Business, Professional, and Governmental Offices related to or supporting of all health and Human Service functions and permitted uses.
> . . . .
>
> G. Educational and Conference and training and vocational Facilities.
>
> H. Financial Services, including banks drive through and ATM's [sic] or drive-up businesses and facilities including Pharmacies.
>
> I. Food Banks, Pantries, Soup Kitchens, Food, Clothing, Household Furnishings, donations, sales, and giveaways.
>
> J. Gyms, Fitness, and Recreational Uses and Facilities

R.R. at 10a. While BTC's challenge was not successful, we note that the proposed amendment was not limited to site-specific relief or to relief that would cure the Ordinance's exclusion. *See Piper Grp., Inc. v. Bedminster Twp. Bd. of Supervisors*, 30 A.3d 1083, 1097 (Pa. 2011) (holding requested relief not appropriate as it provided a windfall beyond what was necessary to cure the constitutional defects) (citation omitted).

[11] Mr. Zoppetti testified that the model of substance abuse treatment center may not be permitted anywhere in the country. *See* BTC's Brief at 4, 28-30; R.R. at 335a.

16

must make provision for every planning variation or combination which has been conceived").

Accordingly, the order of the trial court is reversed.[12]

 

 

_____
CHRISTINE FIZZANO CANNON, Judge

---

[12] Given our determination, we need not reach the Town's argument that the trial court erred in directing the Town to enact an ordinance permitting the Property to be developed in the manner as proposed.

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bloomsburg Town Center, LLC  :
                                :
           v.                 :
                                 :
Town of Bloomsburg,        :   No. 905 C.D. 2019
              Appellant     :

## O R D E R

AND NOW, this 5th day of November, 2020, the order of the Court of Common Pleas of the 26th Judicial District, Columbia County branch in the above-captioned matter is REVERSED.

_____
CHRISTINE FIZZANO CANNON, Judge