IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bloomsburg Industrial Ventures, LLC, :
                  Appellant :
                       :
           v. :
                       :
Town of Bloomsburg Zoning :
Hearing Board :
                       :
           v. :
                       : No. 1752 C.D. 2019
Town of Bloomsburg : Argued: December 8, 2020


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE P. KEVIN BROBSON, Judge[1]
               HONORABLE CHRISTINE FIZZANO CANNON, Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE FIZZANO CANNON        FILED: January 27, 2021


       Bloomsburg Industrial Ventures, LLC (BIV) appeals the October 22, 2019 order of the Court of Common Pleas of the 26th Judicial District, Columbia County branch (trial court) sustaining the decision of the Town of Bloomsburg's (the Town) Zoning Hearing Board (ZHB) that denied BIV's zoning permit application to operate a "nursing home" within the Town. Upon review, we reverse.

       BIV owns property located within the Town's Business Campus Zoning District (BC District) at 338 West Sixth Street, Parcel C (Property). *See*

---

[1] This case was assigned to the opinion writer before January 4, 2021, when Judge Brobson became President Judge.

ZHB Decision dated March 18, 2019 (ZHB Decision) at 2 (pagination supplied), Findings of Fact[2] (F.F.) 9; *see also* BIV Zoning Permit Application submitted May 30, 2018 (Application), Reproduced Record (R.R.) at 231a-32a. On May 30, 2018, BIV submitted the Application to the Town seeking approval to operate a "nursing home" at the Property pursuant to the requirements of the Bloomsburg Zoning Ordinance (Ordinance). *See* ZHB Decision at 1, F.F. 1; *see also* Application, R.R. at 231a-32a. The Application indicated that BIV intended to seek licensing for the nursing home through the Pennsylvania Department of Drug and Alcohol Programs. *See* Application at 1, R.R. at 231a.

On June 21, 2018, the Town denied the Application. *See* ZHB Decision at 1, F.F. 2; *see also* Letter from the Town Zoning Office dated June 21, 2018 (Denial Letter), R.R. at 235a-36a. The Town provided the following reasons for denying the Application:

> A. The proposed use is not a nursing home as provided in the [] Ordinance[;]
>
> B. Application does not provide with adequate specificity the activities which Applicant intends to provide at the facility to determine whether the intended activities comply with [the] Ordinance definition of a nursing home[;]
>
> C. Whether the definition of a Nursing or Convalescent Home as contained in the Bloomsburg Ordinance includes [] "treatment and services in [a] free standing drug and alcohol facility license[d] by the Pennsylvania Department of Drug and Alcohol Programs"[;]

---

[2] The trial court agreed with the ZHB's Findings of Fact and restated them in its opinion filed October 22, 2019 (Trial Court Opinion). *See* Trial Court Opinion at 3-4.

2

D. Application does not provide for a facility to be licensed as a nursing home under the licensure and regulations of the Pennsylvania Department of Health[.]

In review of the application and information provided for the proposed use as a drug and alcohol rehabilitation facility as a nursing home indicates that the proposed use does not meet the definition of a nursing home as set forth in the [O]rdinance and is therefore **DENIED** accordingly.

Denial Letter at 2, R.R. at 236a (emphasis in original). BIV timely appealed the denial of the Application to the trial court, which conducted a hearing on February 7, 2019. *See* ZHB Decision at 1, F.F. 3-4; *see also* Notes of Testimony dated February 7, 2019 (N.T.), R.R. at 33a-201a.

Matthew Zoppetti, a developer and the principal of BIV, testified on behalf of BIV before the ZHB, and explained his desire to do something positive in response to serious addiction issues facing the Town's community. *See* N.T. at 14-16, R.R. at 46a-48a. Zoppetti testified that the Ordinance contains no provision that expressly permits the operation of a drug and alcohol rehabilitation center in the Town. *See* N.T. at 16, R.R. at 48a. Zoppetti testified, however, that he felt the Ordinance's definition of "nursing home" as "a building designed and licensed for the full-time care of human beings and which includes housing or lodging, meals and nursing"[3] was broad enough to cover a drug and alcohol rehabilitation center. *See* N.T. at 16-17, R.R. at 48a-49a. Zoppetti explained that the Property is located in the Town's BC District, which permits the operation of nursing homes. *See* N.T. at 14 & 17, R.R. at 46a & 49a. Therefore, BIV submitted the Application to the Town seeking zoning approval for the Property as a nursing home to be licensed by

---

[3] *See* Ordinance § 27-302.

3

the Pennsylvania Department of Drug and Alcohol Programs.[4]  *See* N.T. at 18, R.R. at 50a.

Additionally, Zoppetti testified that the Ordinance contains no restrictions regarding the type or characteristics of the human beings referred to in the "nursing home" definition.  *See* N.T. at 24, R.R. at 56a.  Zoppetti noted the Ordinance definition likewise places no limitations on the type of full-time care required to qualify for zoning as a nursing home.  *See* N.T. at 24, R.R. at 56a. Similarly, Zoppetti noted that the Ordinance does not specify the type, quantity, or frequency of meals required for nursing home zoning, nor does the Ordinance define or provide guidance as to what constitutes the "nursing" required for nursing home zoning approval.  *See* N.T. at 25-26, R.R. at 57a-58a.  Further, Zoppetti testified that the Ordinance definition of "nursing home" contains no requirements as to what type of license is required to receive zoning approval as a nursing home or which Commonwealth agency must furnish the required license.  *See* N.T. at 20-21 & 25, R.R. at 52a-53a & 57a.  Zoppetti explained that he feels the Ordinance's "nursing home" definition is expansive and inclusive and allows for more care than simply housing, lodging, meals, and nursing.  *See* N.T. at 31-32, R.R. at 63a-64a. Zoppetti testified that, in accordance with the Ordinance's definition, BIV plans to provide full-time care of human beings at the Property and to obtain a license from the Department of Drug and Alcohol Programs.  *See* N.T. at 25, R.R. at 57a.

---

[4] Zoppetti acknowledged that BIV also filed a separate application for zoning approval for a nursing home at the Property that was identical to the instant Application except that it indicated the nursing home was to be licensed by the Department of Health as opposed to the Department of Drug and Alcohol Programs.  *See* N.T. at 32-33, 133-37, R.R. at 64a-65a, 165a-69a.  Zoppetti explained that he filed this other application knowing it would be approved, which it was.  *See* N.T. at 32-33, 133-37, R.R. at 64a-65a, 165a-69a.  Zoppetti explained that he filed the instant Application knowing it would be denied and BIV would be able to frame the appeal in terms of licensing.  *See* N.T. at 32-33, 133-37, R.R. at 64a-65a, 165a-69a.

On cross-examination, Zoppetti reiterated that the Application complies with the Ordinance definition of "nursing home." *See* N.T. at 39-40, R.R. at 71a-72a. Zoppetti noted that the Department of Drug and Alcohol Programs licenses drug and alcohol rehabilitation facilities and suggested that, if the Property receives a license from the Department of Drug and Alcohol Programs, it would not need a license from the Department of Health to operate as a nursing home. *See* N.T. at 40, R.R. at 72a. Zoppetti testified that BIV intends to use the Property as a nursing home as literally defined by the Ordinance and that, provided the literal requirements of the Ordinance definition of "nursing home" are met, the Town should issue a zoning approval. *See* N.T. at 42, 140-142, R.R. at 74a, 172a-174a.

Thomas Shepstone also testified before the ZHB on behalf of BIV as an expert in planning and zoning.[5] *See* N.T. at 43-77, R.R. at 75a-109a. Shepstone testified that he reviewed the Ordinance as it relates to the Application and found that the Ordinance did not specifically contain a provision allowing a drug and alcohol treatment facility as a permitted use. *See* N.T. at 45-46, R.R. at 77a-78a. He stated, however, that Application was consistent with the Ordinance's definition of "nursing home." *See* N.T. at 47 & 49, R.R. at 79a & 81a. He explained that the Ordinance definition requires that a nursing home be licensed, but does not specify the Commonwealth agency by which a nursing home must be licensed. *See* N.T. at 48 & 52, R.R. at 80a & 84a. Shepstone testified that, where a zoning application

---

[5] Shepstone is the principal of Shepstone Management Company, a planning and research consulting firm. *See* N.T. at 44, R.R. at 76a. Shepstone has over 40 years of experience dealing with comprehensive zoning plans, zoning ordinances, subdivision regulations, and other planning activities. *See* N.T. at 44, R.R. at 76a. Additionally, Shepstone has served on the board of a local hospital for 12 years, established the hospital's nursing home, and has served on the nursing home's board as well. *See* N.T. at 45, R.R. at 77a. Shepstone was offered and acknowledged as an expert in planning and zoning with a particular focus in healthcare. *See* N.T. at 44-45, R.R. at 76a-77a.

5

meets Ordinance requirements, the zoning officer lacks discretion and must issue the requested permit. *See* N.T. at 49, R.R. at 81a. He further opined that a zoning officer may not deny a zoning permit based upon speculation about whether an applicant will obtain a permit. *See* N.T. at 62, R.R. at 94a. Regarding the Application, Shepstone testified that he has no doubt that the Application falls within the Ordinance. *See* N.T. at 63, R.R. at 95a. He indicated that the Application stated that BIV would obtain a license from the Department of Drug and Alcohol Programs. *See* N.T. at 48 & 54, R.R. at 80a & 86a. Shepstone opined that the Town's zoning officer impermissibly added the term "Department of Health" to the requirement of the Ordinance definition that a nursing home be licensed. *See* N.T. at 82, R.R. at 84a. Shepstone ultimately concluded that, based on his review of the Ordinance and applicable law, the zoning officer should have approved the Application. *See* N.T. at 49, R.R. at 81a.

On cross-examination, Shepstone indicated that he is aware that the Department of Health licenses nursing homes. *See* N.T. at 66 & 73, R.R. at 98a & 105a. He testified, however, that the Commonwealth of Pennsylvania does not control the Town's definition of "nursing home" for purposes of local zoning. *See* N.T. at 67, R.R. at 99a. Shepstone conceded that the Commonwealth controls to whom it issues nursing home permits under its definition of "nursing home," and that the Department of Health can deny nursing home licensing applications that do not meet its definition, regardless of local zoning definitions. *See* N.T. at 67, R.R. at 99a.

Ralph Magill, the Town's zoning officer,[6] also testified before the ZHB. *See* N.T. at 78-93, R.R. at 110a-25a. Magill testified that he is obligated to follow Ordinance definitions in reviewing zoning applications and, if an application conforms to the literal requirements of the Ordinance, then he is obligated to issue the requested permit. *See* N.T. at 80-81 & 83, R.R. at 112a-13a & 115a. Magill testified a nursing home is permitted by right in the Town's BC District. *See* N.T. at 89, R.R. at 121a. Magill further explained that, while the Ordinance does not specify what agency must issue a license for the Town's zoning purposes, nursing home licenses must be issued by the Department of Health, and that a facility without such a license could not be properly called a "nursing home." *See* N.T. at 87 & 90-91, R.R. at 119a & 122a-23a.

John Varaly testified on the Town's behalf before the ZHB as an expert in the fields of planning and zoning.[7] *See* N.T. at 96-129, R.R. at 127a-61a. Varaly testified that he reviewed the Application and the Denial Letter. *See* N.T. at 96-97, R.R. at 128a-29a. He stated that applicants cannot mix and match licensing agencies and property uses, and that facilities approved as nursing homes would not receive licenses as drug and alcohol rehabilitation centers from the Department of Drug and Alcohol Programs. *See* N.T. at 100-02, R.R. at 132a-34a. Varaly concluded that the denial of the Application was appropriate because the Application is a thinly veiled attempt to circumnavigate the Ordinance and operate a drug and alcohol

---

[6] Magill has been the Town's zoning officer for 23 years and is responsible for reviewing all the Town's zoning applications. *See* N.T. at 78-79, R.R. at 110a-11a.

[7] Varaly is a self-employed professional planning consultant. *See* N.T. at 96, R.R. at 128a. The parties stipulated to his qualifications as an expert in planning and zoning. *See* N.T. at 95, R.R. at 127a.

rehabilitation facility in a zoning district that does not permit such a use. *See* N.T. at 97-98 & 103, R.R. at 129a-30a & 135a.

On cross-examination, Varaly conceded that no part of the Ordinance deals directly with drug and alcohol rehabilitation facilities. *See* N.T. at 105 & 123, R.R. at 137a & 155a. Varaly further conceded that the Ordinance definition of "nursing home" does not specify the Commonwealth agency by which a facility must be licensed to be considered a nursing home for zoning purposes. *See* N.T. at 124, R.R. at 156a. Varaly reiterated, however, that for a license to issue, a use application to a Commonwealth agency must match the issued zoning permit. *See* N.T. at 116-17, R.R. at 148a-49a. Varaly further testified that the Department of Drug and Alcohol Programs lacks authority to license nursing homes. *See* N.T. at 115-16, R.R. at 147a-48a. Varaly explained that zoning officers are permitted to logically interpret zoning requirements, and may therefore question from which Commonwealth agency an applicant's license must issue for zoning purposes. *See* N.T. at 124, R.R. at 156a. Varaly also testified that zoning officers may add reasonable conditions to zoning approvals, and that a condition requiring that a nursing home applicant secure a license from the Department of Health represents such a reasonable condition. *See* N.T. at 125, R.R. at 157a.

On March 18, 2019,[8] the ZHB issued a decision that denied BIV's appeal of the denial of the Application. The ZHB determined that the undefined term "license" within the Ordinance definition of "nursing home" must be construed within the context of nursing homes. *See* ZHB Decision at 4, Conclusions of Law

---

[8] Following the February 7, 2019 hearing, the ZHB held a second hearing on March 7, 2019, at which it announced its decision and voted on the matter. *See* Notes of Testimony dated March 7, 2019, R.R. at 311a-29a. The ZHB issued its formal, written decision thereafter, on March 18, 2019, which became the operable date of decision.

8

(C.L.) 9-10. Therefore, the ZHB determined that the license referred to in the definition of "nursing home" "must be a license which would be appropriate for a nursing home." ZHB Decision at 4, C.L. 11. The ZHB then concluded that BIV failed to present credible evidence illustrating that the Department of Drug and Alcohol Programs licenses nursing homes. *See* ZHB Decision at 4, C.L. 12. The ZHB found, instead, that the Department of Health is the appropriate Commonwealth licensing agency for nursing homes. *See* ZHB Decision at 4, C.L. 13. Therefore, the ZHB determined that the Property's proposed use does not fall within the Ordinance's definition of "nursing home." *See* ZHB Decision at 4, C.L. 14. Accordingly, the ZHB denied BIV's appeal and affirmed the determination of the Town's zoning officer denying the Application. *See* ZHB Decision at 4-5. BIV subsequently filed an appeal to the trial court.

The trial court did not take additional evidence and on October 22, 2019, issued an opinion and order affirming the ZHB. *See* Trial Court Opinion and Order dated October 22, 2019 (Trial Court Opinion). The trial court agreed with the ZHB that the licensing referred to in the Ordinance definition of "nursing home" must be a license appropriate for running a nursing home. *See* Trial Court Opinion at 7. The trial court determined that, because the evidence illustrated that the Department of Drug and Alcohol Programs is not authorized to grant nursing home licenses, the evidence did not sufficiently support a conclusion that the ZHB erred in affirming the denial of the Application by the Town's zoning officer. *See id.* at 6-9. BIV now appeals to this Court.

Where a trial court takes no additional evidence, "our scope of review is limited to determining whether the [ZHB] committed an error of law or manifestly abused its discretion." *Diversified Health Assocs., Inc. v. Zoning Hearing Bd. of*

9

*Borough of Norristown*, 781 A.2d 244, 246-47 (Pa. Cmwlth. 2001) (citing *Valley View Civic Ass'n v. Zoning Bd. of Adjustment*, 462 A.2d 637 (Pa. 1983)). The ZHB is the factfinder here, and a conclusion that it abused its discretion may only be reached if its findings are not supported by substantial evidence. *Diversified Health*, 781 A.2d at 247 (citation omitted). Moreover, whether a proposed use, as described in the Application and through testimony, falls within a given zoning classification is a question of law fully subject to this Court's review. *THW Grp., LLC v. Zoning Bd. of Adjustment*, 86 A.3d 330, 336 (Pa. Cmwlth. 2014).

BIV argues that, because it intends to use its facility to provide full-time care for human beings including housing, lodging, meals, and nursing, and because the Application states that the facility will be licensed by some agency of the Commonwealth, it has complied with the requirements to receive zoning approval for the Property as a nursing home, and therefore the trial court erred by affirming the ZHB's denial of its appeal of the denial of the Application. *See* BIV's Brief at 6-12. Effectively, BIV argues that, because the Ordinance definition of "nursing home" does not specify the Commonwealth agency from which a license must issue for a facility to receive zoning approval under the Ordinance, a license issued by the Department of Drug and Alcohol Programs, as opposed to the Department of Health, will suffice to satisfy the Ordinance definition of "nursing home." *See id.* at 7-8.

The ZHB and the Town[9] counter that, when read in context, the term "license" in the Ordinance's definition of "nursing home" refers to a license issued by the Commonwealth agency responsible for licensing nursing homes. *See* Town's Brief at 8-10; Intervenor's Brief at 5-6. Both argue that, because the evidence

---

[9] The Town intervened on behalf of the ZHB in this matter.

illustrated that the Department of Health is the only Commonwealth agency that licenses nursing homes, the trial court and ZHB properly affirmed the zoning officer's denial of the Application, which sought zoning approval for use of the Property as a nursing home based on a license issued by the Department of Drug and Alcohol Programs. *See* Town's Brief at 9-10; Intervenor's Brief at 5-7.

This case, therefore, presents a question of statutory interpretation. When interpreting the meaning of a zoning ordinance, we are guided by the principles of statutory construction with the primary objective of determining the intent of the legislative body that enacted the ordinance. *THW Grp., LLC*, 86 A.3d at 336. We note that Section 603.1 of the Pennsylvania Municipalities Planning Code (MPC),[10] provides as follows:

> In interpreting the language of zoning ordinances to determine the extent of the restriction upon the use of the property, the language shall be interpreted, where doubt exists as to the intended meaning of the language written and enacted by the governing body, in favor of the property owner and against any implied extension of the restriction.

53 P.S. § 10603.1. Generally, a "zoning officer shall administer the zoning ordinance in accordance with its literal terms[.]" Section 614 of the MPC, 53 P.S. § 10614. Additionally, "[w]here [a] statute or ordinance defines a word or phrase therein the court is bound thereby." *Hughes v. Sch. Dist. of Pittsburgh*, 108 A.2d 698, 699 (Pa. 1954) (emphasis omitted). As our Supreme Court has explained:

---

[10] Act of July 31, 1968, P.L. 805, *as amended*, added by the Act of December 21, 1988, P.L. 1329, 53 P.S. § 10603.1.

11

> A legislative body may, in a statute or ordinance, furnish its own definitions of words and phrases used therein in order to guide and direct judicial determination of the intendments of the legislation although such definitions may be different from ordinary usage; it may create its own dictionary to be applied to the particular law or ordinance in question.

*Hughes*, 108 A.2d at 699 (quoting *Sterling v. City of Philadelphia*, 106 A.2d 793, 795 (Pa. 1954)). Further, "[w]ith respect to zoning matters, undefined terms are given their plain meaning, and any doubt is resolved in favor of the landowner and the least restrictive use of the land." *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015) (some brackets and internal quotation marks omitted).

With this background in mind, we now turn to the Ordinance. At the time BIV filed the Application, the Ordinance defined "nursing home" as:

**NURSING OR CONVALESCENT HOME**

A building designed and licensed for the full-time care of human beings and which includes housing or lodging, meals and nursing.

Ordinance § 302.[11] Pursuant to this definition, to be zoned as a "nursing home" in the Town, an applicant's use must (1) be designed to provide full-time care of human

---

[11] In May 2019, the Town amended the definition of "nursing home." The definition of "nursing home" now reads:

**NURSING HOME**

A long-term health care facility, licensed by the Pennsylvania Department of Health, that offers twenty-four-hour room and board and health care services, including basic and skilled nursing care.

beings, and (2) be licensed for such use. *See id.* Further, "full-time care" requires that human beings cared for receive, at a minimum, "housing or lodging, meals and nursing." *Id.* Therefore, if these requirements are met, the use qualifies as a "nursing home" in the Town under the Ordinance, and zoning as such must follow. *See* Section 614 of the MPC, 53 P.S. § 10614; *Hughes*, 108 A.2d at 699.

Here, BIV's principal testified before the ZHB that BIV intends to use the Property to provide full-time care of human beings by providing individuals with housing, meals, and nursing care, and, further, that BIV intends to seek a license for this activity from the Department of Drug and Alcohol Programs. *See* N.T. at 18 & 25, R.R. at 50a & 57a. BIV's planning and zoning expert testified that the application is consistent with the Ordinance's definition of "nursing home." *See* N.T. at 20-21, 25 & 39-40, R.R. at 52a-53a, 57a & 71a-72a. BIV's expert further testified that, where an application meets the Ordinance's requirements, the zoning officer lacks discretion and must issue the requested permit. *See* N.T. at 49, R.R. at 81a. Additionally, the zoning officer confirmed that he is obligated to follow Ordinance definitions in reviewing zoning applications and that he is obliged to issue a permit if an application conforms to the literal Ordinance requirements. *See* N.T. at 80-81 & 83, R.R. at 112a-13a & 115a.

Further, the Ordinance itself does not specify the human beings who must receive full-time care in order for a facility to be considered a nursing home, nor does the Ordinance specify the type of nursing care those human beings must receive. Therefore, under the Ordinance's definition of "nursing home," that BIV intends to provide full-time care for human beings with drug and alcohol dependency

---

Ordinance § 27-302.

13

issues as opposed to elderly human beings is of no moment so long as BIV intends to house, feed, and provide nursing care for those individuals.[12]

Likewise, the Ordinance does not specify or require that any particular Commonwealth agency must license a use in order for the use to qualify as a "nursing home." Therefore, that BIV intends to become licensed by the Department of Drug and Alcohol Programs as a drug and alcohol rehabilitation center as opposed to by the Department of Health as a traditional nursing home is also immaterial under the Ordinance's "nursing home" definition. The Department of Drug and Alcohol Programs licenses the types of drug and alcohol rehabilitation facilities contemplated by BIV's zoning application. *See* N.T. at 40, R.R. at 72a. No party argues that drug and alcohol rehabilitation facilities do not house, feed, and provide nursing care for human beings afflicted with substance dependency issues. Therefore, per the text of the Ordinance, a license issued by the Department of Drug and Alcohol Programs would have the same effect on whether a use could be considered a "nursing home" in the Town as would a license issued by the Department of Health. As BIV correctly points out, neither the zoning officer, the ZHB, nor the trial court may add words or graft a requirement to the Ordinance's definition of "nursing home" that requires licensing by a particular Commonwealth agency where the Ordinance has not so specified. *See* BIV's Brief at 7.

---

[12] We note that, to the extent the terms "full-time care" or "nursing" can be argued to be ambiguous, we must interpret those terms in favor of BIV as property owner and against implied restrictions. *See* Section 603.1 of the MPC, 53 P.S. § 10603.1; *see also Adams Outdoor Advert., LP v. Zoning Hearing Bd. of Smithfield Twp.*, 909 A.2d 469, 484 (Pa. Cmwlth. 2006) (noting that, "where doubt exists, the language of a zoning ordinance should be interpreted, in favor of the landowner and against any implied extension of restrictions on the use of one's property"); *Kohl v. New Sewickley Twp. Zoning Hearing Bd.*, 108 A.3d 961, 968 (Pa. Cmwlth. 2015) ("where the words of the ordinance are ambiguous, courts construe the ordinance in favor of the landowner").

14

Simply put, the Town is stuck with the definition of the term "nursing home" provided by its own zoning ordinance, even though the definition may differ from ordinary usage or the Town's preferred use. *See Hughes*, 108 A.2d at 699. BIV's proposed use meets the Ordinance's literal definition of a "nursing home" within the Town.

Further, we note that speculation about whether the Department of Drug and Alcohol Programs will ultimately issue a license does not factor into the request for zoning approval. As this Court has acknowledged, where zoning approval requires a permit or license from an outside agency, conditional zoning approval based on the issuance of such permit or license is appropriate. *See Kohr v. L. Windsor Twp. Bd. of Supervisors*, 910 A.2d 152, 159 (Pa. Cmwlth. 2006). It is for the Department of Drug and Alcohol Programs, not this Court, to determine whether to issue BIV a license based on its own definitions and requirements as applied to a license application submitted by BIV.

For the above reasons, we find that the trial court erred in affirming the ZHB Decision that denied BIV's appeal of the Application's denial by the Town's zoning officer. Accordingly, we reverse the trial court order.

_____
CHRISTINE FIZZANO CANNON, Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Bloomsburg Industrial Ventures, LLC, :
                           Appellant :
                                     :
                     v.              :
                                     :
Town of Bloomsburg Zoning            :
Hearing Board                        :
                                     :
                     v.              :
                                     :  No. 1752 C.D. 2019
Town of Bloomsburg                   :

# O R D E R

AND NOW, this 27th day of January, 2021, the October 22, 2019 order of the Court of Common Pleas of the 26th Judicial District, Columbia County branch, is REVERSED.

_____
CHRISTINE FIZZANO CANNON, Judge